JOSEPH SIMS ET AL. v. JOHN SEALY ET AL.

Decided February 2, 1909.

1.—Deed—Sufficiency of Description.

A deed described the land conveyed as "One sitio and labor of land surveyed for me on Chinquepin Creek where I now live." Held, the description was sufficient to identify the land when taken in connection with certain extrinsic evidence, although the State and county in which the land was situated were not stated, and the patent described the land as being upon a different creek.

2.—Public Land—Location and Survey—Segregation.

The location of a land certificate, survey of the land, and return of the field notes to the Land Office segregates the land surveyed from the public domain as effectually as the issuance of the patent so far as the right of the grantee to sell the land is concerned, and this right is not affected by the fact that because of some defect in the field notes of the first survey it became necessary to have them corrected, and the patent embodied the corrected field notes.

3.—Deed—Defective Certificate of Proof—Ancient Instrument.

One of the subscribing witnesses to a deed made oath before a proper officer that "He was one of the subscribing witnesses to the foregoing instrument and saw the same signed for the uses and purposes therein contained." Held, the certificate of proof of the deed for record was insufficient to admit it in evidence without other proof of its execution. But the deed being more than thirty years old it was admissible in evidence as an ancient instrument.

4.—Same—Same—Statute Construed.

Under the curative provisions of art. 2312, Rev. Stats., as amended by the Act of 1907 (Gen. Laws, 1907, page 308) a certified copy of a deed dated and recorded in 1838, the certificate of proof for record of which deed was defective, was admissible in evidence as against one who acquired an adverse claim to the land more than ten years after the deed was put upon record but before the passage of said Act. Said Act relates to a rule of evidence.

5.—Title—Evidence—Instrument Construed.

An instrument executed in 1838, partaking of the nature both of a deed and a power of attorney, considered, and held to vest the title to the land therein described in the party to whom the same was given. In the early history of this State instruments in the form of powers or attorney were used in making conveyances of land, especially after location of certificate and before issuance of patent.

Appeal from the District Court of San Augustine County. Tried below before Hon. W. B. Powell.

*E. P. Padgett,* for appellants.

*Davis & Davis,* for appellees.—Description may be aided by extrinsic testimony: McWherter v. Allen, 1 Texas Civ. App., 649; Kingston v. Pickins, 46 Texas, 99; Wilson v. Smith, 50 Texas, 365; Brown v. Chambers, 63 Texas, 131; Overand v. Menczer, 83 Texas, 122; Cook v. Oliver, 83 Texas, 562.

On sufficiency of description: Bullock v. Smith, 72 Texas, 548; Gresham v. Chambers, 80 Texas, 548; Slack v. Dawes, 22 S. W., 1053; Witt v. Harlan, 66 Texas, 661.

The issuance by the Board of Land Commissioners of San Augustine County of certificate No. 384 for one league of land to Joseph Simms on February 22, 1838, and the location of said certificate and the survey made of the land on which it was located on June 15, 1838, segregated the land from the public domain and vested title in Joseph Sims, and he could sell and dispose of the same whenever he desired. Howard v. Perry, 7 Texas, 266; Hamilton v. Avery, 20 Texas, 635; Sherwood v. Fleming, 25 Texas Sup., 428; Milam Co. v. Bateman, 54 Texas, 163; Jones v. Lee, 86 Texas, 41, and authorities there cited.

The acknowledgment to the deed from Joseph Sims to Elisha Roberts, dated November 1, 1838, which conveys the Joseph Sims sitio and labor of land is sufficient, and the deed is admissible in evidence. Sec. 35, art. 2752, and sec. 38, art. 2755, of an Act Organizing the Inferior Courts and Defining the Powers and Jurisdiction of the same, approved on December 20, 1836; Paschal v. Perez, 7 Texas, 357; Act of February 5, 1841; Act of March 17, 1841; Act of 1907, p. 308, chap. 165.

The deed from Joseph Sims to Elisha Roberts dated November 1, 1838, conveyed the land therein described to said Elisha Roberts and was not a power of attorney. Ryan v. Jackson, 11 Texas, 399; Martin v. Parker, 26 Texas, 260; Cook v. Lindsay, 57 Texas, 69; McElyea v. Hayter, 2 Porter (Ala.), 148; Davidson v. Senior, 23 S. W., 24; Cox v. Bray, 28 Texas, 260; Brown v. Simpson Heirs, 67 Texas, 225; Manchaca v. Field, 62 Texas, 139; Fulton v. Duncan, 18 Texas, 34; Clay v. Holbert, 14 Texas, 196.

REESE, Associate Justice.—As originally instituted, this was a suit by John Sealy and others against T. W. Jeans & Son to recover the value of certain timber alleged to have been· cut by defendants on a tract of land in San Augustine County belonging to plaintiffs. Joseph Sims and others, claiming to be heirs of Joseph Sims, the original grantee ·of the land, and E. P. Padgett, claiming title to one-half of the land under conveyance from said heirs, intervened, setting up title to the land. Plaintiffs dismissed their suit as to Jeans & Son, and it then became an action of trespass to try title between interveners as plaintiffs and the original plaintiffs, Sealy and others, as defendants, and as such was tried without a jury, the trial resulting in a verdict for John Sealy and others from which intervening plaintiffs appeal. Conclusions of fact and law were prepared and filed by the trial court.

It is the contention of appellants that the land, which was a part of a league and labor of land patented to Joseph Sims, was never alienated by him, and that they as heirs and appellant Padgett as their vendee are owners thereof. Appellees contend that the title passed out of said Joseph Sims by virtue of a certain instrument executed by him November 1, 1838, to Elisha Roberts, under whom they hold by regular chain of title.

The following conclusions of facts of the trial court are adopted by us as correct:

"The land in question was patented to Joseph Sims on December

15, 1851, by virtue of a survey on June the 15, 1838, and resurveyed July, 1841, and that Joseph Sims on the 1st day of November, 1838, conveyed the land by the following instrument to Elisha Roberts:

"Republic of Texas.  In the county of San Augustine, on the first of Novr., 1838.  Know all men by these presents, that I, Joseph Sims, for and in consideration of the sum of five hundred dollars, which amount of five hundred dollars I acknowledge have this day received from citizen Elisha Roberts Esqr., have constituted and appointed Elisha Roberts Esqr. my true and lawful attorney for me and in my name to sell, alien, convey, recover, pay for and in my name to execute full, ample, complete and bona-fide warrants, title and deed of sale to one sitio and labour of land surveyed for me on Chinkapin Bayou where I now live on the east side of Ayish Bayou, and for me and in my name to make to any person or persons he may choose a deed of sale, & by these presents granting and making over from myself, my heirs & assigns to said Elisha Roberts, his heirs and assigns a full, free & perfect administration of all and singular the rights, privileges & immunities which to me appertained in and to said league and labour of land, with all its appurtenances with full, free and irrevocable powers to my said attorney, his heirs & assigns, to take possession of, sue for and recover, cultivate, hold, enjoy, sell, alien, convey, a good & perfect legal & warranty title in my name to make to any person or persons for said sitio and labour of land, hereby ratifying & confirming fully & completely & in all due and legal form every & all acts which my said attorney may do in my name in the premises, hereby declaring any sale, transfer, alienation, conveyance, deed of sale & in fine all he may do in the premises as legal, binding, obligatory in law and equity as if done by me in my own proper person.                                          his

(Signed) Joseph   X   Sims.
                          mark

"Witness:
   "John M. Henrie.
   "John B. Stoddard.


"Republic of Texas,          }
   County of San Augustine.  }
   "This day personally appeared before me John B. Stoddard, who, after being duly sworn, says that he was one of the subscribing witnesses to the foregoing instrument and saw the same signed for the uses and purposes therein contained.  Given under my hand the 11th day of November, 1838.

"S. W. Blount, Clk. Co. C.
   "A true copy of the original recorded 12th Novr. 1838."


"This instrument was recorded on November 12, 1838, in the deed records of San Augustine County and has been upon the record ever since.  About the time of the sale of the land, as conveyed in the above instrument, Joseph Sims moved from the land to the State of Louisiana, a distance of about thirty-four miles, where he lived continuously until his death in 1864 or 1865.  Elisha Roberts died in

the year 1844 in the fall of said year, and prior to his death, in July, he sold a portion of the Sims survey, which was conveyed to him by the above instrument, to one William Dickerson, and Dickerson and his heirs, and those claiming under and through him, have continuously asserted title to the property by living upon it and claiming it and selling it. Roberts sold the land to Dickerson as owner and not as agent or attorney. Roberts, by his will, gave a portion of the Sims land to his daughter, Mahala Hall. Elisha Roberts' will was probated in the Probate Court of San Augustine County, Texas, shortly after his death, and his executors took charge and inventoried all the Joseph Sims league of land as belonging to Roberts' estate, and shortly after, about the year 1851, the executors of Roberts partitioned and divided the Sims league of land between his eight children, and in the partition and division they set apart to Esther Jane Sublett, one of the heirs of Elisha Roberts, the land in controversy in this suit. Elisha Roberts before his death contracted to sell a portion of the Sims league to Samuel Loggins before his death, and after Roberts' death in 1851, Samuel Loggins applied to the executors of Elisha Roberts to complete the sale to him made by Elisha Roberts, and the executors of Elisha Roberts made a conveyance of a portion of the land to the said Loggins. The heirs of Elisha Roberts, and those to whom they have sold, have continuously, from the time of the partition of the Joseph Sims survey in 1852, asserted title to the parts set apart to them and many persons are now living upon the league of land and have continuously lived upon the league, asserting title through the Roberts heirs. Esther Jane Sublett, one of the heirs of Elisha Roberts, who was awarded in the partition the portion of the land in controversy, asserted claim and title to the land and paid taxes thereon for a number of years until she sold the property to George Ball, J. B. Hutchings, John Sealy and George Sealy on the 9th day of March, 1870, by a deed made to them by her, of that date, to the land set apart to her in the partition of the estate of Elisha Roberts, which deed was immediately recorded in book 2, page 26, of the deed records of San Augustine County, Texas, which deed has been upon record since. The plaintiffs in this cause have the title to the property which was conveyed by Esther Jane Sublett, as stated last, by a partition deed made between John H. Hutchings, George Sealy, George Ball and John Sealy, Sarah Ball, Frank M. Ball, J. C. and Nellie League, in which partition deed the land in controversy in this suit was conveyed and set apart to the estate of John Sealy, and the plaintiffs in this case are the heirs of John Sealy.

"Neither Joseph Sims nor his heirs ever lived upon the land from 1838 down to the present time, and neither Joseph Sims nor his heirs have ever sold or attempted to sell any of the land, and have never paid any taxes on the same, or have ever asserted claim or title to the land by placing upon the records of the county any sort or kind of an instrument, and the first claim which has ever been made to the land by either Joseph Sims or his heirs, from the time he sold it in 1838, was last year, 1907, when the heirs of Joseph Sims executed powers of attorney to E. P. Padgett, coupled with a half interest in Padgett in the survey.

"The executors of the will of Elisha Roberts inventoried the Joseph Sims as part of the estate of said Roberts and the same was partitioned among the heirs of said Roberts, all of which is of record in San Augustine County, Texas.

"Joseph Sims was on the land, at Sam Loggins' house, in 1848 or 1849, and in 1851 or 1852. When he was there in 1848 or 1849 he was looking after some cattle, and when he was there in 1851 or 1852 he said he had been to Austin to look after his land matters, or to get his patent. It was further testified by the witness Maxey that he was a nephew of Joseph Sims and was seventy years old and lived in Louisiana from the time he was born until 1886, about ten miles from Manny, in Sabine Parish, and about ten miles from where Joseph Sims lived; that he heard Joseph Sims say about 1860 that he claimed the land in Texas, and that he heard him afterwards speak of his Texas land, and that in 1871 the witness received a letter, which he read, from John Sims, one of Joseph Sims' sons, who at the time lived in southern Texas, telling the witness to go to Manny and look after his land. The witness stated that the letter meant for him to look after the land in Texas. The heirs of Sims never made any power of attorney and never employed anybody to look after the land until last year, when they employed E. P. Padgett.

"The parties represented by E. P. Padgett are the heirs of Joseph Sims, deceased, and E. P. Padgett, one of the interveners, has a power of attorney from each and all of said heirs, conveying to him a one-half interest in whatever interest the said heirs had in the Joseph Sims league."

From these facts the court concluded that the instrument recited was intended to convey the title to the league and labor of land, and not as a power of attorney, and further concluded that on its face this was the effect of the instrument.

By their first assignment of error appellants complain of the action of the court in admitting in evidence the instrument of November 1, 1838, herein recited, over their objections based on the following grounds:

1. Because the instrument recited fails to describe the land with sufficient certainty to identify it.

2. Because it failed to state the county or State in which the land is situated, and the patent shows the land to be on Chiaman Creek and does not mention Chinquepin Creek.

3. Because the instrument taken in connection with the patent shows that at the time said instrument was made the land had neither been patented or surveyed, nor segregated from the public domain.

4. Because the instrument was not proven for record as required by law.

None of the objections to the introduction in evidence of the instrument are tenable. The land is described as "one sitio and labor of land surveyed for me on Chinquepin Creek, where I now live." It was shown that Sims at that time lived upon the league of land afterwards patented in his name, of which the land in controversy is a part, and that this is the same land surveyed for him in April, 1838. The field notes of this survey returned to the Land Office

were afterwards corrected in 1841, and the patent issued upon the corrected field notes. This did not substantially affect the identity of the league surveyed with that patented, and it was satisfactorily shown that the league surveyed for Sims in 1838, and on which he was living when the instrument to Roberts was executed, was the same land covered by the patent. The location and survey in 1838 separated the land from the public domain as effectually as the patent insofar as the right of the grantee to sell was concerned, and this was not affected by the fact that on account of some omission or defect in the field notes it was found necessary to have corrected field notes upon which the patent issued. The testimony shows that on account of the omission of a call the original field notes did not close, which required correction.

We are inclined to think that the certificate of proof of the instrument for record was insufficient to admit it in evidence without proof of its execution under the statute, but it was executed in 1838 and was admissible as an ancient instrument without proof of its execution. It appears from the record that the original instrument was offered in evidence, but if in fact a certified copy was offered the defect in the certificate of proof for record was cured, and the certified copy properly admitted under the provisions of article 2312, as amended by the Act of 1907. (Chapter 165, Acts of the Thirtieth Legislature, page 308.) This was not affected by the fact that appellant Padgett had acquired his interest before the passage of this Act. The statute in question relates to a rule of evidence in which no one has a vested right. (Mious v. The State, 31 Texas Crim. Rep., 597.) The Act in question by its terms does not apply as against a claim adverse to or inconsistent with that evidenced under the instrument which has been asserted during the first ten years that the instrument has been upon record. The court finds that this instrument has been upon record since 1838 and that no adverse claim has been asserted against that conveyed by it until the execution of the power of attorney to Padgett in 1907. There was no error in admitting the instrument in evidence. The first assignment of error presenting the point is overruled.

The fourth assignment is that the court erred in admitting in evidence the instrument executed by Joseph Sims and in construing the same to be a deed and not a power of attorney. The only proposition under this assignment, which is not itself presented as a proposition, is that "so long as the title is imperfect and inchoate the lands belong to the State of Texas, and the public lands are not a lawful subject matter of private contract, and any attempt to convey the same by one person to another passes no interest whatever in the land and does not create the relation of vendor and vendees." This proposition has no proper relation to the assignment in question, and the question attempted to be raised by the assignment might properly be dismissed without consideration. If the question of the proper construction of this instrument were properly presented we would hold that, as concluded by the trial court, the instrument on its face is a deed and not a power of attorney. It is a part of the history of the country, of which courts take judicial notice, that in making

conveyances of land, especially after location of certificate and before issuance of patent, instruments in the form of powers of attorney were used. (Cox v. Bray, 28 Texas, 260.) The terms of this instrument are entirely inconsistent with a mere power to sell for the benefit of the maker. They evidence a purpose to confer full sovereignty and beneficial ownership in the land, and if there were any doubt about this the findings of fact show conclusively that it has been so treated by Sims during his lifetime and his heirs after him, as well as by Roberts and those claiming under him from the date of the instrument in 1838 until the date of this belated claim in 1907.

The trial court was correct both in construing this instrument as a deed and not a mere power of attorney, on its face, and also in finding as a fact from the evidence, that such was the intention of the parties. (Cook v. Lindsay, 57 Texas, 69; Brown v. Simpsons' Heirs, 67 Texas, 225; Davidson v. Senior, 3 Texas Civ. App., 547.)

We find no error in the record and the judgment is affirmed.

*Affirmed.*