DOWNS v. BLOUNT et al.

(Circuit Court of Appeals, Fifth Circuit. May 3, 1909.)†

No. 1,802.

**1.** CONSTITUTIONAL LAW (§ 109*) — RULES OF EVIDENCE — CHANGE — VESTED RIGHT.

The Legislature has power to prescribe or to change the rules of evidence, the parties having no vested right to have their case tried by such existing rules.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 260 - 263; Dec. Dig. § 109.*]

**2.** CONSTITUTIONAL LAW (§ 109*)—VESTED RIGHTS—DEPRIVATION OF PROPERTY.

The Legislature, under pretense of making or changing a rule of evidence, cannot deprive a party of a vested right in property.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 260–263; Dec. Dig. § 109.*]

**3.** CONSTITUTIONAL LAW (§ 92*)—"VESTED RIGHT."

A vested right protected by the federal and state Constitutions is some right or interest in property which has become fixed and established and is no longer open to doubt or controversy. It does not, however, include a claim to property which is contrary to justice and equity, nor does it include a right to property purchased pending litigation concerning the title bought, so as to free it from the effect of subsequent curative legislation.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 174; Dec. Dig. § 92.*

For other definitions, see Words and Phrases, vol. 8, pp. 7307–7309. 7829.]

**4.** CONSTITUTIONAL LAW (§ 193*) —RETROSPECTIVE LAWS—CURATIVE ACTS.

Const. Tex., prohibiting retroactive legislation, does not preclude the passage of remedial or curative acts which do not deprive one of vested rights.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 536; Dec. Dig. § 193.*]

**5.** ACKNOWLEDGMENT (§ 3*)—ACKNOWLEDGMENT BY MARRIED WOMAN—DEFECTS—CURATIVE ACTS.

A married woman's deed containing an insufficient acknowledgment, but otherwise valid, was admissible as proof of title after the passage of Act 30th Leg. Tex., approved April 12, 1907 (Laws 1907, p. 308, c. 165), more than 10 years after the deed had been recorded, providing that under certain circumstances an instrument, if recorded for 10 years, whether proved or acknowledged in such manner as required at the time it was recorded or not, shall be admitted in evidence in any suit in the state without proof of its execution.

[Ed. Note.—For other cases, see Acknowledgment, Dec. Dig. § 3.*]

**6.** ACKNOWLEDGMENT (§ 6*)—DEED OF WIFE—"VOID."

The term "void" can only accurately be applied to those contracts that have no effect whatsoever and which are mere nullities, such as those which are against law, illegal, criminal, or in contravention of law and incapable of confirmation or ratification; hence a married woman's deed defectively acknowledged is not void.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. § 51; Dec. Dig. § 6.*

For other definitions, see Words and Phrases, vol. 8, pp. 7332–7339, 7830, 7342.]

McCormick, Circuit Judge, dissents.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 24, 1909.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

In the court below there was a consolidation of the causes styled "Emma V. Powell vs. George E. Downs," and "E. A. Blount vs. George E. Downs et al.," both being actions of trespass to try title under the statutes of Texas. The land involved is the east half of the Joses Hobdy league, situated in San Augustine county, Tex.

The original petition of Emma V. Powell was filed on February 27, 1904, the plaintiff therein claiming to be the owner of an undivided one-fourth interest in the east half of said league. The original petition of E. A. Blount was filed on October 5, 1907, the plaintiff therein claiming the east half of said league. On November 4, 1907, the Garrison-Norton Lumber Company filed its petition in intervention claiming the timber on the land in controversy. The plaintiff in error, George E. Downs, answered the petitions of the plaintiffs and intervener by a general demurrer, plea of "not guilty," and pleas of the statutes of three, five, and ten years' limitations, and, by cross-action, brought in S. W. Blount and F. G. Roberts, Jr., warrantors in the chain of title under which Downs held, and in his cross-action against the intervener he alleged that the claim of the intervener was a pretended and fictitious claim, and invalid and known to the intervener to be invalid, or it could have been known by the exercise of ordinary prudence, and asked for judgment for the timber cut and removed by said intervener.

S. W. Blount answered this cross-action with a general demurrer and plea of "not guilty." It appeared upon the trial that F. G. Roberts, Jr., was dead, and the cross-action was dismissed as to him. On November 18, 1907, the causes were consolidated. It appeared upon the trial of the consolidated causes that E. A. Blount had acquired the interest claimed by the plaintiff, Emma V. Powell, and he was substituted as plaintiff in her stead, and she was dismissed from the suit. The consolidated causes were tried before a jury on December 10, 1907, and, under peremptory instructions from the court, the jury brought in the following verdict:

"We, the jury, find in favor of the plaintiff, E. A. Blount, and against the defendant, George E. Downs, for the land in controversy, except the timber thereon sold by Blount to the intervener, Garrison-Norton Lumber Company; and as to said timber on said land so sold we find in favor of the intervener, Garrison-Norton Lumber Company, and against the defendant, George E. Downs, for such timber; and we find in favor of the defendant, George E. Downs, on his cross-action against the defendant, S. W. Blount, on his warranty for the sum of $2,435.40, together with 6 per cent. interest thereon from December 8, 1881."

Thereupon judgment was rendered upon said verdict in favor of the defendants in error, E. A. Blount and Garrison-Norton Lumber Company, against the plaintiff in error, George E. Downs, for the land and timber sued for, but with a judgment in favor of the plaintiff in error on his cross-action against S. W. Blount for $6,234.37, with 6 per cent. interest from date, to all of which rulings of the court the plaintiff in error duly excepted.

Both plaintiff in error and the defendants in error claimed the land and timber involved in this suit from a common source of title, to wit, Martha R. Jones. Martha R. Jones acquired the land from Hilliard J. Jones, a brother-in-law, by deed dated March 27, 1854, filed for record April 16, 1855, and duly recorded. The title of the plaintiff in error from the common source down to himself is as follows:

(1) Martha R. Jones and her husband, Jas. A. Jones, to Jas. Vaughan, deed dated October 15, 1854, filed for record April 15, 1855, and duly recorded, the consideration being $3,000.

(2) The heirs of Jas. Vaughan, by their attorney in fact, J. R. Powell, a deed to S. W. Blount, Jr., and Felix Roberts, Jr., dated November 22, 1881, and duly recorded.

(3) The plaintiff in the first suit, Emma V. Powell, was one of the heirs of Jas. Vaughan, and she and her husband, Joe R. Powell, executed a deed to Stephen Blount and Felix Roberts, Jr., on December 1, 1881, filed December 8, 1881, and duly recorded.

From this deed on down the title of the plaintiff in error was regular and unquestioned. The defendant in error, E. A. Blount, claimed the land by purchase from the heirs of Martha R. Jones and Jas. A. Jones by deed dated May 6, 1907. A short time prior to that date, said heirs executed deeds to the said Blount conveying the timber on said lands. The defendant in error, Garrison-Norton Lumber Company, based its claim to the timber upon the land in controversy on a deed from E. A. Blount.

The title of the plaintiff in error. George E. Downs, was regular, except for the married woman's acknowledgments to the deed from Martha R. Jones and her husband to Jas. Vaughan, and to the deed from Emma V. Powell and her husband to S. W. Blount and Felix Roberts, Jr. These deeds were both links in the chain of title of the plaintiff in error, and, because the acknowledgments were not in statutory form, the court refused to allow them to be introduced in evidence for any purpose, and to this action of the court the plaintiff in error duly excepted.

The deed of Martha R. Jones and her husband, which was rejected as evidence, is as follows:

"James A. Jones and Wife to James Vaughan.

"Warranty Deed, dated Oct. ——, 1854, filed Apr. 15, 1855; recorded Deed Record Book I, p. 262. Consideration $3000.

"This indenture made and entered into this, the —— day of October, in the year one thousand eight hundred and fifty-four, by and between James A. Jones and Martha R. Jones, his wife, of the first part, and James Vaughan, of the second part, of the county of Ouachita, state of Arkansas, witnesseth: That the said party of the first part, for and in consideration of the sum of three thousand dollars, to them in hand paid, the receipt whereof they do hereby acknowledge, have the day of the date hereof granted, bargained, sold, aliened and confirmed, and by these presents do grant, bargain, sell, alien unto and with the said party of the second part all that certain tract or parcel of land situated in the state of Texas, county of San Augustine, and described as follows: Beginning on the south boundary line of Joses Hobdy headright survey of one league of land at a post oak 15 in. in dia. 4230 varas distant east of the Ayish bayou, from which a post oak a pine bears north 70 deg. west 12 varas; thence north magnetically until it intersects the northern boundary line to the league survey; thence east with the northern boundary line to the northeast corner or station of said survey; thence south with the eastern boundary of said league survey to its southeast station; thence west with the southern boundary line of said league survey to beginning, containing one-half of said league of land, more or less.

"To have and to hold the aforesaid tract of land together with all the hereditaments, appurtenances, improvements thereto belonging to the said party of the second part, his heirs and assigns, forever, and the said party of the first part will forever defend the title of said land to the party of the second part, his heirs and assigns, forever, against the lawful claims of all persons.

"In testimony whereof the said party of the first part have hereunto set their hands and affixed their seals day and date above written.

"J. A. Jones.    [Seal.]<br>
"Martha R. Jones. [Seal.]

"Attest:  J. Maddon.<br>
       "Peter Pope.

"The State of Arkansas, County of Ouachita.

"Be it remembered that on this the 15th day of October, A. D. 1854, before me, Thomas Hubbard, as judge of the circuit court of said county, which is a court of record, personally came James A. Jones, whose signature appears to the foregoing deed, known to me, who acknowledged that he had executed the said deed for the purposes and consideration therein expressed; also Martha R. Jones, wife of the said James A. Jones, whose signature appears to the said deed, to me well known, voluntarily appeared before me and declared that she had signed and sealed and executed said deed for the purposes and con-

170 F.—2

sideration therein contained and set forth without any compulsion of or undue influence of her said husband.

"Given under my hand and seal the date within written.

"Thomas Hubbard, [L. S.]
"Judge, C. C."

The plaintiff and intervener objected to this deed on the ground, in substance, that it showed that the property it purported to convey was the separate property of a married woman, Martha R. Jones, and that the certificate of acknowledgment was fatally defective in failing to comply with the statute of Texas relating to the acknowledgment of the deeds of married women in force at the date of the deed. These exceptions were sustained, and the deed was rejected as evidence. The refusal of the court to admit this deed (and a similar deed on like objections) is really the basis of all questions raised in the court below and of the assignment of errors here.

T. D. Cobbs (Baker, Botts, Parker & Garwood, of counsel), for plaintiff in error.

Greer, Minor & Miller and Goodrich & Synnott, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge (after stating the facts as above). The land in controversy was conveyed to Martha R. Jones, the wife of James A. Jones, on March 27, 1854. Both parties to the suit deraign title from her. She and her husband conveyed the land on October 15, 1854, to James Vaughan, and the deed was filed for record April 15, 1855, and duly recorded. The chief controversy in the case relates to defects in the certificate of acknowledgment to this deed. James Vaughan and those who succeeded to his rights, including Downs, the plaintiff in error, claimed the land under this deed for more than a half century, no one else during that time asserting any adverse claim to it. Martha R. Jones and her husband lived in Arkansas when they made the deed, but they afterwards moved to Texas, and lived there till he died in 1864. She continued to live in Texas after his death, and died there in 1897. They had received $3,000 for the land. He lived 10 years, and she 42 years, after making the deed and receiving the purchase money, and neither of them ever repudiated the contract. The first original petition in this case was filed February 27, 1904. E. A. Blount, the defendant in error, on May 6, 1907, after the institution of the suit, and with knowledge of the claim of Downs to the land, purchased it from the surviving children and heirs of Martha R. and James A. Jones. The purchase of the timber was also made with notice of Downs' claim and pending the suit. Blount bought the land and timber relying on—and he now relies on—the defective certificate to the deed made by Martha R. Jones and her husband to Vaughan in 1854.

It may be conceded that the authorities cited by the learned counsel for the defendant in error are conclusive on the point that the certificate to the deed was not such as was required by the laws of Texas, and that the conveyance in question did not at the time of its execution and delivery convey the legal title.

Whether or not the written attempt to convey the title, for the

recited consideration, was absolutely void, is a question to be considered later.

The plaintiff in error contends that the Jones deed was admissible in evidence notwithstanding the defective certificate of acknowledgment, because of the curative statute passed by the Thirtieth Legislature and approved April 12, 1907 (Laws 1907, p. 308, c. 165). This statute was an amendment of article 2312 of the Revised Statutes of Texas of 1895. The article, as amended, is as follows, the amendment being shown by italics:

"Art. 2312. Every instrument of writing which is permitted or required by law to be recorded in the office of the clerk of the county court, and which has been, or *hereafter* may be so recorded, after being proven or acknowledged in the manner provided by the laws *of this state* in force at the time of its registration, *or at the time it was proved or acknowledged, or every instrument which has been or hereafter may be actually recorded for a period of ten years in the book used by said clerk for the recording of such instruments, whether proved or acknowledged in such manner or not,* shall be admitted as evidence *in any suit in this state* without the necessity of proving its execution; *provided no claim adverse or inconsistent to the one evidenced by such instrument shall have been asserted during that ten years;* provided, that the party who wishes to give (it) *such instrument* in evidence shall file the same among the papers of the suit in which he proposes to use it, at least three days before the commencement of the trial of such suit, and give notice of such filing to the opposite party or his attorney of record; and unless such opposite party, or some other person for him, shall, within three days before the trial of the cause, file an affidavit stating that he believes such instrument of writing to be forged. And whenever any party to a suit shall file among the papers of the cause an affidavit stating that any instrument of writing, recorded as aforesaid, has been lost, or that he can not procure the original, a certified copy of the record of any such instrument shall be admitted in like manner as the original could be. *And after such instrument shall have been actually recorded as herein provided for a period of ten years, it shall be no objection to the admission of same, or a certified copy thereof, as evidence, that the certificate of the officer who took such proof or acknowledgment is not in form or substance such as required by the laws of this state, and said instrument shall be given the same effect as if it were not so defective.*"

The contention of the defendant in error is that, if the act is so construed as to make it applicable to this case, it would be in violation of the provision of the federal Constitution against impairing the obligation of contracts and of the due process clause of the fourteenth amendment; and that it would also be in violation of article 1, § 16, of the Texas Constitution of 1876, which declares that:

"No * * * retroactive law, or any law impairing the obligation of contracts, shall be made."

The court below excluded the deed because of the defective acknowledgment. The curative act provides in plain words that under certain circumstances the instrument, if it has been recorded for 10 years, "whether proved or acknowledged in such manner or not, shall be admitted as evidence in any suit in this state, without the necessity of proving its execution." There can be no doubt about the power of the Legislature to prescribe or to change rules of evidence. The right to have a case tried by existing rules of evidence is not a vested right. Such rules, like others affecting remedies, are at all times subject to modification and control by the Legislature, and the changes are

applicable to existing causes of action, even in states where retrospective laws are forbidden. Cooley's Constitutional Limitations (6th Ed.) 451. Referring to such changes in the rules of evidence, Cooley gives the familiar instance of a Legislature making a tax deed prima facie evidence that all proceedings have been regular, thereby changing the burden of proof from one party to the other; and then he makes the significant observation that:

"Statutes making defective records evidence of valid conveyances are of a similar nature; and these usually, perhaps always, have reference to records before made, and provide for making them competent evidence where before they were merely void." Id. 452.

A Legislature, while it has the undoubted power to make a tax deed prima facie evidence of the regularity of the steps preceding the sale, could not make it conclusive evidence. Neither could the Texas Legislature make an imperfect and ineffective deed so conclusive as to cut off the right of a party to show its invalidity as being forced or otherwise. And it is true that, under pretense of making or changing a rule of evidence, the Legislature cannot deprive a party of a vested right in property. And this limitation of legislative power is urged with much earnestness on our attention. Whether or not Blount has a "vested right," within the meaning of the limitation, is a question that must be decided. In deciding it, we must consider what rights, if any, were conferred by the defective deed of the Joneses to Vaughan in 1854, as well as what rights, if any, were conferred by the deed of the Jones heirs to E. A. Blount in 1907.

In this case, much depends on the meaning to be given to the phrase "a vested right." The phrase is not found either in the federal or the state Constitution. In this connection it must mean some right or interest in property that has become fixed and established and is no longer open to doubt or controversy. A claim to property, however, which is contrary to justice and equity, cannot be regarded as of that character; for, when called on to decide whether or not the right is vested, "the courts have never deemed it necessary to close their eyes to the equities of the case, but have frequently permitted their judgments to be influenced by the consideration that that which the Legislature has done in the way of disturbing rights acquired under existing laws was morally right, and in accordance with justice and fair dealing." Evans-Snider-Buel Company v. McFadden, 105 Fed. 293, 301, 44 C. C. A. 494, 502, 58 L. R. A. 900. It was said in an early case, and afterward approved by the Supreme Court, that "there is no such thing as a vested right to do wrong." Foster v. Essex Bank, 16 Mass. 244, 273, 8 Am. Dec. 135; Freeborn v. Smith, 2 Wall. 160, 175, 17 L. Ed. 922; Freeland v. Williams, 131 U. S. 405, 420, 9 Sup. Ct. 763, 33 L. Ed. 193.

Blount, with full knowledge of Downs' interest in and claim to the land, bought it for the avowed purpose of taking advantage of the defective certificate of acknowledgment. He knew that the Joneses had been paid for the land, and that Downs and those under whom he claimed had held it for a half century. The $3,000 paid for it when the Joneses sold it, at 6 per cent. interest, would amount to much

more than its present value. Morally and equitably, it would have been the duty of Mrs. Jones to have corrected the deed if she had known of the defect in her lifetime. Whatever rule may have prevailed in the courts, equitably and rightfully, Mrs. Jones, and her heirs after her death, had no right to hold both the land and the money paid by Vaughan for it. If we are to recognize the principle that there can be "no vested right to do wrong," it is difficult to see how Blount acquired a vested right protected from remedial and curative legislation by his purchase. At common law, his deed from the Jones heirs would be void, because no interest in land could be conveyed unless the grantor was in actual or constructive possession (Du Bois v. McLean, 4 McLean, 486, Fed. Cas. No. 4,107; 9 Am. & Eng. Ency. of Law [2d Ed.] 129); and the civil law "forbids a thing that is litigious to be alienated" (3 Washburn on Real Estate, 349). This rule of the common and civil law does not prevail in Texas; "in this state * * * the adverse possession of land in no way hinders or precludes its sale and conveyance by the owner." Campbell v. Everts, 47 Tex. 102. But Blount not only obtained his alleged title from grantors against whom the land was held adversely, but he bought it pending litigation concerning the very title he bought. The general rule seems to prevail in Texas that "he who purchases during the pendency of a suit is held bound by the decree against the person from whom he derives title." Lee v. Salinas, 15 Tex. 495, 497. At any rate—and that is all that concerns us here—a purchaser under such circumstances would not obtain a "vested right," in the sense that it was not subject to the curative legislation in question.

The prohibition against the enactment of retroactive laws in the Texas Constitution has not been applied literally so as to prevent the passage of any law which looks backward or affects past transactions. To so construe it would "create inextricable difficulties" and embarrass legislation. It does not cut off remedial laws nor curative statutes which do not deprive one of vested rights. De Cordova v. Galveston, 4 Tex. 470, 477. In Johnson v. Taylor, 60 Tex. 360, 366, the court calls attention to the fact that the same Texas Constitution that forbids the passage of retroactive laws impliedly recognizes the power to pass general laws giving effect to "informal or invalid wills or deeds." Const. Tex. art. 3, § 56. There is nothing in the local law that takes the case out of the general rule. The Legislature had the power to pass the law and make it applicable to the case at bar if it does not deprive Blount of a vested right within the legal meaning of that phrase. An act similar to the one in question here was upheld by the Supreme Court in Webb v. Den, 17 How. 576, 15 L. Ed. 35, the court saying:

"It is a wise and just act; it governs this case, and justifies the court in admitting this deed in evidence. It was registered in 1809, and some of the grantees have been in possession under it ever since. After such a length of time, the law presumes it to have been registered on lawful authority, without regard to the form of certificate of probate or acknowledgment. As a legal presumption it is conclusive that the deed was properly acknowledged, although the contrary may appear on the face of the papers. It is not a 'retrospective law' under the Constitution of Tennessee, which the Legislature is forbidden to pass. It is prospective, declaring what should thereafter be

received in courts as legal evidence of the authenticity of ancient deeds. It makes no exception as to the rights of married women, and the courts can make none. Informalities and errors in the acknowledgments of femes covert are those which the carelessness and ignorance of conveyancers were most liable to make, and which most required such curative legislation. The registration being thus validated, copies of such deeds stand on the same footing with other legally registered deeds, of which copies are made evidence by the law."

In Randall v. Krieger, 23 Wall. 137, 23 L. Ed. 124, the court held that a Legislature may pass laws giving validity to past deeds of land, which were before ineffectual, such as a law validating an ineffectual acknowledgment of a married woman. See, also, Goshorn v. Purcell, 11 Ohio St. 641; Kobbe v. Harriman Land Company, 117 Tenn. 315, 98 S. W. 177.

But it is contended that there was in existence no defective deed to be perfected—that the instrument was a nullity.

Much of the argument of the learned counsel for the defendant in error is based on the proposition that the deed in question is void. The application of the statute to this deed is referred to as an attempt "to make a deed where none existed." On the other hand, the attorneys for the plaintiff in error insist that the deed offered in evidence was not absolutely void, but that it is an instrument defectively executed, which at least conferred equitable rights. These contentions present a question of much importance, for while the Legislature might have the power to pass an act which removes a defect in an existing inchoate or ineffective contract, it might not have the power to create a conveyance—to make a contract between the parties. Cases are cited from the Texas court of last resort, saying in plain words that the deed of a married woman defectively acknowledged and proved is void. If we accepted these expressions as conveying the real meaning of the court, these cases would be conclusive as to this contention. But we know that the word "void" is so often used in the sense of "voidable," or invalid, or nonenforceable, that it has almost lost its primary meaning, and when it is found in a statute or judicial opinion it is often necessary to resort to the context to determine precisely what meaning is to be given to it. In Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682, the Supreme Court held that a Texas statute which said that a contract of a certain kind was "void and of no effect" meant only that it was voidable. "It is quite true," said Mr. Justice Matthews, speaking for the court, "that the usury statute referred to declares the contract of loan, so far as the whole interest is concerned, to be 'void and of no effect.' But these words are often used in statutes * * * in the sense of voidable merely—that is, capable of being avoided—and not as meaning that the act or transaction is absolutely a nullity, as if it never had existed, incapable of giving rise to any rights or obligations under any circumstances." In holding that the deed of an insane person was voidable and not void, in Allis v. Billings, 6 Metc. (Mass.) 415, 39 Am. Dec. 744, the court said:

"The term 'void,' as applicable to conveyances or other agreements, has not at all times been used with technical precision, nor restricted to its peculiar and limited sense as contradistinguished from 'voidable'; it being frequently introduced, even by legal writers and jurists, where the purpose

is nothing further than to indicate that a contract was invalid and not binding in law. * * * The term 'void' can only be properly applied to those contracts that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification."

The deed in question here is in proper form, reciting a valuable consideration, and signed by the husband and wife. It is imperfect and ineffective only because of the defects in the acknowledgment, or the certificate of acknowledgment, in regard to the wife. If the acknowledgment and certificate had conformed to the statute, the conveyance would have been effective and perfect. Can it possibly be true that the deed was void, in the sense of nullity; that it was practically a piece of blank paper when presented to the magistrate for his certificate? To so hold would be to say that the magistrate's certificate is the only effective part of a married woman's deed. Although the deed was imperfect, it seems to us that it was evidence of an uncompleted contract, for, the next hour or the next day, the proper acknowledgment could have been made and the certificate attached that would have made perfect an imperfect conveyance. The truth is—and it is a conclusion that cannot be denied—the term "void," when we speak with technical accuracy, can only be applied to those contracts that are of no effect whatsoever, mere nullities, such, for example, as are against the law, illegal or criminal, or in contravention of that which the law requires, and incapable of confirmation or ratification. The fact that such deeds, though ineffective and defective, may be the subject of suits to perfect them (Rev. St. Tex. 1895, art. 4663), is, of itself, sufficient to show that the Supreme Court of Texas, in referring to them as "void," did not mean to use the word in its strict technical sense. In Johnson v. Taylor, supra, the court said, citing earlier Texas cases:

"Equities of persons claiming under instruments executed by married women, but not properly acknowledged and certified, have been recognized and protected."

We are advised that the Supreme Court of Texas has not yet construed or passed on the constitutionality of the statute in question. The following cases decided by the Texas Court of Civil Appeals tend to sustain our conclusion: Sims v. Sealy, 116 S. W. 630; Millwee v. Phelps, 115 S. W. 891; Ariola v. Newman, 113 S. W. 157; Haney v. Gartin, 113 S. W. 166. The case of Klumpp v. Stanley, 113 S. W. 602, also decided by the Texas Court of Civil Appeals, is to the contrary, but the conclusion of the learned court is based on the idea that the deed of a married woman, without the proper certificate of acknowledgment, is absolutely void.

We are of opinion that the deed was admissible in evidence, and that, when admitted, it should be "given the same effect as if it were not so defective." This conclusion is also applicable to the other deed which was excluded on the same grounds.

The judgment of the Circuit Court is reversed, and the cause remanded for a new trial.

McCORMICK, Circuit Judge, dissents.