Court Of Appeals
Fourth Court of Appeals District of Texas



# MEMORANDUM OPINION

No. 04-08-00820-CV

**MR. W FIREWORKS, INC.**,
Appellant

v.

Mariana **OZUNA**, Arthur Martinez, Stanley Rone, Alamo Fireworks, Inc.,
and AAM Holdings, LLC,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-05098
Honorable Karen Pozza, Judge Presiding[1]

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:   October 28, 2009

AFFIRMED

On August 26, 2009, we issued an opinion affirming the trial court's judgment. *See Mr. W*

*Fireworks, Inc. v. Ozuna*, No. 04-08-00820-CV, 2009 WL 2616507 (Tex. App.—San Antonio Aug.

26, 2009). Appellant Mr. W Fireworks, Inc. then filed a motion for rehearing. We deny the motion

---

[1] The Honorable David A. Berchelmann, Jr., presided over the motion for summary judgment hearing. The Honorable Karen Pozza signed the final judgment.

for rehearing; however, to correct a factual misstatement and clarify our opinion, we withdraw our prior opinion and judgment, and substitute this opinion and judgment in their place.

Mr. W Fireworks, Inc., appeals from the trial court's grant of summary judgment. On appeal, Mr. W argues that the trial court incorrectly interpreted the contract at issue. We affirm.

## BACKGROUND

Mr. W owns and operates retail fireworks stands located on leased premises in Bexar County, Texas. In a contract dated September 12, 2002, Mr. W contracted with Arthur Martinez to lease an area of Martinez's property for the purpose of selling fireworks. In a contract dated September 26, 2002, Mr. W contracted with Mariana Ozuna for the purpose of leasing a portion of Ozuna's property to sell fireworks. In a contract dated February 6, 2003, Mr. W and Stanley Rone entered into a lease for the purpose of Mr. W selling fireworks on a portion of Rone's land.

All three contracts contained the following language:

Lessee [Mr. W] is leasing this property for the purpose of selling fireworks from said location, and shall remove same from the property upon the termination of this lease.

Lessee shall also have the exclusive privilege to sell fireworks on subject property during the period of this lease and the term granted. *In the event the sale of fireworks on the aforementioned property is or shall become unlawful during the period of this lease and the term granted, this lease shall become void and any unused payment is returned.*

Lessor(s) agree not to sell or lease any part of said property including any adjoining, adjacent, or contiguous property to any person(s) or corporation for the purpose of selling fireworks in competition to the Lessee during the term of this lease, and for a period of ten years after lease is terminated.[2]

---

[2] Unlike its leases with Martinez and Ozuna, Mr. W's lease with Rone did not include a ten-year period during which Rone could not lease to a competitor. Instead, Mr. W's lease with Rone states, "Lessor(s) agree not to sell or lease any part of said property including any adjoining, adjacent, or contiguous property to any person(s) or corporation for the purpose of selling fireworks in competition to the Lessee during the term of this lease *and after lease is terminated*." (emphasis added). For purposes of our analysis, it does not matter that Rone's lease did not specify a period of time during which Rone could not lease to a competitor.

(emphasis added).

Chapter 11 of the City of San Antonio Fire Code prohibits the sale and possession of fireworks, at any time, within the City of San Antonio's incorporated city limits and within 5,000 feet of the city limits. Before January 5, 2003, all three properties, owned by Rone, Ozuna, and Martinez respectively, were outside the city limits. On January 5, 2003, the Rone Property was annexed for limited purpose by the City of San Antonio, and the Ozuna Property became within 5,000 feet of the city limits as a result of said annexation. Thus, as of January 5, 2003, it was legal to sell fireworks on the Martinez Property, but not on the Rone Property or the Ozuna Property.

On May 29, 2003, the City of San Antonio amended Chapter 11 of the City of San Antonio Fire Code to allow the sale of fireworks during the Fireworks Seasons within limited purpose city limits until January 5, 2006, but only at locations at which fireworks were legally offered for sale on July 1, 2002. Pursuant to this amended city ordinance, Mr. W legally sold fireworks on the Rone Property and the Ozuna Property until January 5, 2006.

On August 1, 2004, the Martinez Property was annexed for limited purpose by the City of San Antonio. Thus, on August 1, 2004, it became illegal to sell fireworks on the Martinez Property, and because fireworks were not sold from the Martinez Property on July 1, 2002, fireworks could not be legally sold on the Martinez Property pursuant to the amended city ordinance. And, because it was now illegal to sell fireworks on the Martinez Property, the lease became "void" pursuant to the terms of the lease.

Also pursuant to the amended city ordinance, on January 6, 2006, it became illegal to sell fireworks on Rone's and Ozuna's properties. Therefore, pursuant to the terms of the Rone and Ozuna leases, on January 6, 2006, the Rone and Ozuna leases became "void."

On February 2, 2006, Martinez and Mr. W again entered into a contract for the purpose of Mr. W selling fireworks on Martinez's property. The language of this contract was exactly the same as the 2002 contract, and also contained a provision that "[i]n the event the sale of fireworks on the aforementioned property is or shall become unlawful during the period of the lease and the term granted, this lease shall become void and any unused payment be returned."

On March 1, 2008, the City of San Antonio disannexed Martinez's and Rone's property, and Ozuna's property was no longer within 5,000 feet from San Antonio's city limits. Thus, all three properties were no longer subject to Chapter 11 of the City of San Antonio's Fire Code, and it became legal once again to sell fireworks on all three properties. All three property owners (AAM Holdings, LLC, had bought Martinez's property) entered into new leases with Mr. W's competitor, Alamo Fireworks, Inc., for the purpose of selling fireworks on their properties.

On March 31, 2008, Mr. W sought injunctive relief and brought suit against the property owners for breach of contract, alleging that the property owners had breached the provision in their respective leases requiring that they not lease to a competitor of Mr. W for ten years after the lease terminated. Mr. W also sued Alamo for tortious interference with contracts. In response, on September 30, 2008, Ozuna, Rone, and Alamo filed a traditional motion for summary judgment, arguing that the leases had not been breached. They emphasized that pursuant to the amendment of the city ordinance, it had become illegal to sell fireworks on the properties at issue. Thus, pursuant to the terms of the leases, the leases had become "void." Therefore, they argued that Mr. W could not establish that there is a valid, enforceable contract. AAM Holdings, LLC, then filed its own motion for summary judgment, also arguing that Mr. W could not prove a valid, enforceable contract. In response, Mr. W filed its own motion for partial summary judgment, requesting that the

trial court find that Ozuna, Rone, and AAM Holdings, LLC, had breached their respective contracts with Mr. W by leasing to Alamo and that Alamo was liable for tortiously interfering with the contracts.

At the trial court, the parties filed a document entitled "Stipulated Facts." That document states,

> *In order to simplify the presentation and decision of this case*, the parties submit the following set of stipulated facts:
>
> 1.      Mr. W Fireworks, Inc. ("Mr. W") and Alamo Fireworks, Inc. ("Alamo") are each in the business of selling fireworks.
>
> 2.      Mr. W and Alamo each regularly lease property upon which to sell fireworks.
>
> 3.      Chapter 11 of the City of San Antonio Fire Code prohibits the sale and possession of fireworks, at any time, within the City of San Antonio's incorporated city limits and within 5,000 feet of the City of San Antonio's incorporated city limits.
>
> 4.      Applicable state statutes allow the sale of fireworks only during the period beginning June 24 and ending at midnight on July 4, and the period beginning December 20 and ending at midnight on January 1 of the following year (the "Fireworks Seasons").
>
>                  * * *
>
> 16.      The Rone Property was annexed for limited purpose by the City of San Antonio on January 5, 2003, and the Ozuna Property became within 5,000 feet of the city limits of San Antonio as a result of said annexation. The Martinez Property was annexed for limited purpose by the City of San Antonio on August 1, 2004.[3]
>
> 17.      On or about May 29, 2003, the City of San Antonio amended Chapter 11 of the City of San Antonio Fire Code to allow the sale of fireworks

---

[3] On appeal, Mr. W claims that we must disregard this stipulation about the Ozuna Property coming within 5,000 feet of the City of San Antonio city limits, because it is not really a stipulation of "fact," but is a conclusion of law, and thus of no effect. We disagree. Whether the property is within 5,000 feet from the city limits is an issue of fact.

during the Fireworks Seasons within limited purpose city limits until January 5, 2006, but only at locations at which fireworks were legally offered for sale on July 1, 2002.

18. Pursuant to the above-referenced amendment of city ordinance, Mr. W legally sold fireworks on the Rone Property and the Ozuna Property within the limited purpose corporate limits of the City of San Antonio during the Fireworks Seasons until January 5, 2006.

19. The sale of fireworks from the Martinez Property and the Diaz-Rangel Property during the Fireworks Seasons became illegal as to the entirety of each tract following the limited purpose annexation of said properties by the City of San Antonio because fireworks were not sold from either the Martinez Property or the Diaz-Rangel Property on July 1, 2002.

20. The Martinez Property, Rone Property, and Diaz-Rangel Property were disannexed by the City of San Antonio on March 1, 2008, and the Ozuna Property became outside 5,000 feet of the City of San Antonio city limits, at which point the Subject Properties were no longer subject to regulation by the City of San Antonio including, without reservation, Chapter 11 of the City of San Antonio Fire Code.

(emphasis added). Given these stipulations, the trial court, in determining the merits of the summary judgment motions, was left with merely interpreting the language of the leases. It interpreted the leases in favor of the property owners and Alamo, granting their motions for summary judgment and rendering judgment that Mr. W take nothing. Mr. W now appeals.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we take as true all evidence favorable to the respondent, and indulge every reasonable inference and resolve any doubts in favor of the respondent. *Id.* Further, when both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, as here, we consider the summary judgment

evidence presented by both sides, determine all questions presented, and if we determine that the trial court erred, render the judgment that the trial court should have rendered. *Id.*

## DISCUSSION

At issue are the following two provisions contained within the respective leases:

Lessee shall also have the exclusive privilege to sell fireworks on subject property during the period of this lease and the term granted. *In the event the sale of fireworks on the aforementioned property is or shall become unlawful during the period of this lease and the term granted, this lease shall become void and any unused payment is returned.*

Lessor(s) agree not to sell or lease any part of said property including any adjoining, adjacent, or contiguous property to any person(s) or corporation for the purpose of selling fireworks in competition to the Lessee during the term of this lease, *and for a period of ten years after lease is terminated.*

(emphasis added). Thus, pursuant to the lease, if the sale of fireworks "is or shall become unlawful during the period" of the lease and the term granted, the lease shall become "void."

### A. Was the sale of fireworks unlawful, or did it become unlawful to sell fireworks during the period of the respective leases?

We must first determine whether the sale of fireworks was illegal or became illegal during the period of the respective leases, which in turn made the leases, pursuant to its own terms, "void."

With respect to the Martinez Property, the sale of fireworks became illegal on August 1, 2004. The first contract between Martinez and Mr. W states that Mr. W. shall lease Martinez's property "for a period of one year with eight consecutive one year options from September 20, 2002." The contract further states that rent is due on the twentieth day of every June and December and that "[e]ach year shall be considered optioned providing the rent is paid on or before the above-specified dates." If Mr. W did not exercise its option to extend the period of the lease, the lease would have expired on September 20, 2003. However, the uncontroverted summary judgment

evidence shows that Mr. W paid rent to Martinez for "several years." And, because paying rent automatically invoked Mr. W's option to extend the term of the lease, Mr. W's payment of rent to Martinez for "several years" denotes that Mr. W exercised its option to extend the period of the lease beyond August 1, 2004. Thus, the sale of fireworks became illegal during the period of Martinez's first lease with Mr. W. With respect to the February 2, 2006, contract between Martinez and Mr. W, at the time the parties entered into the contract, it was unlawful to sell fireworks on the Martinez Property. It did not become lawful until March 1, 2008, when the Martinez Property was disannexed by the city.

On January 6, 2006, it became illegal to sell fireworks on both the Ozuna and Rone Properties. The contract for lease between Mr. W and Ozuna states that the lease shall be "for a period of one year with four consecutive one year options from September 26, 2002." The contract for lease between Mr. W and Rone states that the lease shall be "for a period of one year with five consecutive one year options from February 19, 2003." Both contracts further state that rent will be due on the twentieth day of every June and December and that "[e]ach year shall be considered optioned providing the rent is paid on or before the above-specified dates." The parties stipulated that Mr. W made seven payments to Ozuna pursuant to the terms of lease, "up to and including the payment due on December 20, 2005." The parties also stipulated that Mr. W made four payments to Rone pursuant to the terms of the lease, "up to and including payment due on December 20, 2005." Thus, by making the rent payments to Ozuna and Rone, Mr. W automatically exercised its options to extend the lease terms of both leases beyond January 6, 2006. Therefore, it became illegal to sell fireworks on the Ozuna and Rone Properties during the lease period.

B. *What does the term "void" mean in the leases?*

Mr. W argues that "[u]pon the illegalization of fireworks sales, at the election of Mr. W, the tenancy ended, thus relieving the parties of their respective future performance for rent and possession obligations. But the end of the tenancy also triggered the restrictive covenants for which [Mr. W] paid and Appellees accepted consideration." The property owners and Alamo disagree with Mr. W's interpretation of the provisions, arguing that when the city ordinance made the sale of fireworks illegal on the subject properties, the leases became "void," resulting in the property owners and Mr. W no longer having an enforceable agreement. We agree with the property owners' and Alamo's interpretation of the leases.

We interpret an unambiguous contract as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex. 2003) (quotations omitted). Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Id.* If contract language can be given a certain or definite meaning, then it is not ambiguous. *Id.* "Lack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity." *Id.* (quotations omitted). "Rather, ambiguity arises when an agreement is susceptible to more than one reasonable meaning after application of established rules of construction." *Id.*

Established rules of construction require that we ascertain the intent of the parties to the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). The language used in the agreement is the primary evidence of that intent. *See id.* "To achieve this objective, [we] should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Valence*, 164 S.W.3d at 662.

"Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Id.*

In its brief, Mr. W argues that the parties did not intend the phrase, "this lease shall become void," to mean that the contract would actually become "void." Mr. W claims that the parties instead intended "void" to mean "terminable," thus triggering the provision that the property owners could not lease their respective properties to a competitor. Mr. W argues the following in its brief:

> The term "void" is "often used in statutes and legal documents, such as deeds, leases, bonds, mortgages, and others, in the sense of voidable merely, that is, capable of being avoided, and not as meaning that the act or transaction is absolutely a nullity, as if it had never existed, capable of giving rise to any rights or obligations under any circumstances." *Ewell v. Daggs*, 108 U.S. 143, 148-49 (1883). Appellees' arguments ignore this time-honorable principle of law.
>
> "The term 'void' as applicable to conveyances or other agreements has not at all times been used with technical precision, nor restricted to its peculiar and limited sense . . . ." *Downs v. Blount*, 170 F. 15, 22 (5th Cir. 1909). "The truth is–and it is a conclusion that cannot be denied–the term 'void,' when we speak with technical accuracy, can only be applied to those contracts that are of *no effect whatsoever*, mere nullities, such, for example, as are against the law, illegal, or criminal, or in contravention of that which the law requires, and incapable of confirmation or ratification." *Id.* at 23. That effect is not at all applicable to the leases here.

(emphasis in original). According to Mr. W's reply brief, "Texas law and common sense dictate that the term 'void' be read to mean 'voidable.'" Thus, Mr. W argues that the phrase "shall become void" was a "contingent limitation" that created "a voidable agreement, which the restrictive covenants survive."

The problem with Mr. W's interpretation is that it argues that "void" really means "voidable," while at the same time arguing that the provision restricting the property owners from leasing to competitors survived the agreement. This is inconsistent with the meaning of "voidable" contracts. For example, when a minor enters into a contract, that contract is not void, but is voidable at the

election of the minor. *Diaryland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 158 (Tex. 1973). "This means that the minor may set aside *the entire contract* at his option, but he *is not entitled to enforce portions that are favorable to him and at the same time disaffirm other provisions that he finds burdensome*." *Id.* (emphasis added). "He is not permitted to retain the benefits of a contract while repudiating its obligations." *Id.* Here, while Mr. W is arguing that the illegalization of the sale of fireworks on the respective properties made the contract "voidable," it is still seeking to enforce the provision of the contract prohibiting the property owners from leasing to competitors. We decline to adopt such an interpretation.

Further, we note that the leases include a variation of the word "terminate" no less than three different times. We must assume that because the parties used the word "terminate" three other times in the leases, but instead chose to use the word "void" when discussing the illegalization of the sale of fireworks, the parties meant "void" to mean something different from "terminate." As contracts requiring an illegal act are void, *see Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.), it is logical that the parties would use the word "void" to describe the possibility of the sale of fireworks becoming illegal. Thus, we conclude that "void" as used in the contracts herein really does mean "void." We, therefore, hold that the illegalization of the sale of the fireworks on the respective properties did not trigger the provision in the leases prohibiting the property owners from leasing to competitors of Mr. W.

## CONCLUSION

We affirm the judgment of the trial court.

Karen Angelini, Justice