## PHELPS v. CHURCH OF OUR LADY HELP OF CHRISTIANS.

(Circuit Court of Appeals, Third Circuit. January 30, 1900.)

No. 24.

**1. Venue—Action to Recover Value of Stone Taken from Land.**

One holding a right of property in the stone and other valuable substances contained in land in New York may sue in New Jersey a trespasser who quarries stone from such land, and removes it to New Jersey, and there converts it, to recover the value of the stone.

**2. Actions—Waiver of Tort.**

Where a trespasser has quarried and removed stone belonging to plaintiff, the latter can waive the tort, and sue in assumpsit, especially where the trespasser has not only actually applied the stone to his own beneficial use, but has so used the stone that it cannot be reclaimed.

**3. Assumpsit—Questions Cons'dered—Title to Lands.**

Defendant entered on and quarried stone from land which plaintiff had leased of a third person for such purpose, and plaintiff brought assumpsit to recover the value of the stone. Plaintiff was in possession by virtue of a judgment in forcible entry and detainer against defendant, when the action was brought, and has since retained possession. Defendant had no evidence of title to the land, but, on the contrary, was a mere trespasser. *Held* that, though a question of title to land could not be tried in the action, no such question was involved.

In Error to the Circuit Court of the United States for the District of New Jersey.

Robert H. McCarter, for plaintiff in error.

David McClure, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. By an indenture made November 25, 1892, between Mary Brady, party of the first part, and James W. Carpenter, Jr., and James A. Phelps, parties of the second part, the first party "demised and leased" unto the second parties, "their heirs or assigns," for the "full term of fifty years," a tract of land described by metes and bounds, "with the right to dig, mine, quarry, use, remove, appropriate, and convert, to the sole use and benefit of the said parties of the second part, their heirs and assigns, all or any marble, stone, or other valuable material or substance to be found on, in, or under said lands," and with the further right to "erect, maintain, operate, use, remodel, or remove any buildings, machinery, or other structures that the said parties of the second part may desire." The deed contains a covenant on the part of the first party for the quiet and peaceable possession and enjoyment by the second parties of the demised premises, and a covenant by the second parties to pay to the first party a royalty of 20 cents per cubic yard "for each and every yard of marble, stone, or other valuable material or substance removed or shipped from, appropriated and converted to the use and benefit of the said parties of the second part, their heirs and assigns, during the continuance of this lease." And the deed reserves to the first party "the occupancy of the present buildings, and the right to cultivate the land not occupied, used, or required for the proper prosecution of the business operations of the parties of the second part."

Manifestly, under this indenture, the parties of the second part, or their assigns, are not mere licensees, clothed simply with a right to quarry stone or other valuable substance from the land described. According to all the authorities, this deed operated to convey an estate in the land for the specified term of 50 years, and its legal effect was to pass to the parties of the second part and their assigns a right of property in the stone and other valuable substances contained in the land. Bainb. Mines (Dallas' Ed.) p. 261; Doe v. Wood, 2 Barn. & Ald. 724, 738; New Jersey Zinc Co. v. New Jersey Franklinite Co., 13 N. J. Eq. 322, 341; Gartside v. Outley, 58 Ill. 210; Ganter v. Atkinson, 35 Wis. 48; Baker v. Hart, 123 N. Y. 470, 25 N. E. 948; Chicago & A. Oil & Mining Co. v. U. S. Petroleum Co., 57 Pa. St. 83; Appeal of Stoughton, 88 Pa. St. 198, 201; Duke v. Hague, 107 Pa. St. 57; Brown v. Beecher, 120 Pa. St. 590, 603, 15 Atl. 608.

On November 28, 1892, the above-mentioned lease was duly assigned to the Oswegatchie Company, which company, on June 25, 1895, sublet unto the Metropolitan Marble Company, for the term of 20 years, the said tract of land, together with all the rights, benefits, liberties, and privileges thereto belonging, and, specifically, "the right to dig, mine, quarry, use, remove, appropriate, and convert, to the sole use and benefit" of the said sublessee, "all or any marble, stone, or other valuable material or substance to be found on, in, or under the land." Under the sublease to it, the Metropolitan Marble Company entered into possession of said land, which is situate in Lewis county, in the state of New York, and operated a stone quarry which previously had been opened thereon.

In this action of assumpsit, the receiver of the Metropolitan Marble Company seeks to recover the value of certain stone which, as he alleges and claims to have shown, was wrongfully mined from and taken out of the said quarry during his company's ownership thereof, as lessee, by one John J. Sullivan, who was acting for the defendant, and was a naked trespasser, as against the Metropolitan Marble Company; which stone was brought by the defendant to East Orange, in the state of New Jersey, and was there actually appropriated by the defendant, and used in building its church.

Now, if the true state of facts be as above alleged, it seems to us, under the authorities, that the plaintiff can maintain a personal action in this jurisdiction against the defendant to recover the value of this stone. Hoy v. Smith, 49 Barb. 360; Hughes v. United Pipe Lines, 119 N. Y. 423, 23 N. E. 1042; Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co., 55 N. J. Law, 350, 357, 26 Atl. 920. And we think that the plaintiff could waive the tort, and sue in assumpsit, especially in view of the fact that the defendant had not only actually applied the stone to its own beneficial use, but had so used the stone that it cannot be reclaimed. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216; Dundas v. Muhlenberg's Ex'rs, 35 Pa. St. 351, 353; Halleck v. Mixer, 16 Cal. 574, 578; 2 Greenl. Ev. § 108.

The rulings of the court below did not directly contravene any of the legal principles we have discussed; but upon the conclusion of the plaintiff's case, and without any evidence having been offered by

the defendant, the learned judge instructed the jury to find a verdict in favor of the defendant, on the ground that the case involved a question of title to the land from which the stone was taken, which question could not be determined in this action.  Was the court justified in thus taking the case from the jury?

Now, the court of errors and appeals of New Jersey, in Lehigh Zinc & Iron Co. v. New Jersey Zinc & Iron Co., supra, after stating that the owner of land can generally maintain trover against a person who severs and converts to his own use what is part of the realty, such as ores, etc., added this qualification:

"But there is a considerable line of cases holding that if the defendant, at the time of the severance, is in adverse possession of the realty, under a bona fide claim of title, the thing severed becomes his property, so that the owner of the land cannot maintain trover or replevin therefor, but must resort to his remedy for the possession of the land and mesne profits."

The earliest case in this line is Mather v. Ministers, 3 Serg. & R. 509, in which the supreme court of Pennsylvania ruled that trover for stone and gravel dug from land does not lie, by one who has the right of possession, against the person who has the actual adverse possession of the land and sets up title to it.  From the later decision by the same court, in Harlan v. Harlan, 15 Pa. St. 507, 513, 514, it appears that the possession, to defeat such personal action, is not the occupancy of a mere intruder, but actual adverse possession, maintained under a bona fide claim of title.  In Halleck v. Mixer, 16 Cal. 574, the rule is thus stated:

"The plaintiff, out of possession, cannot sue for property severed from the freehold, when the defendant is in possession of the premises from which the property was severed, holding them adversely, in good faith, and under claim and color of title.  In other words, the personal action cannot be made the means of litigation determining the title to real property, as between conflicting claimants; but the rule does not exclude the proof of title on the part of the plaintiff in other cases; for it is, as we have already observed, upon such proof that the right to recover rests.  It is because the plaintiff owns the premises, or has a right to their possession, that he is entitled to the chattel which is severed; and that must, of course, in the first instance, be established.  A mere intruder or trespasser is in no position to raise the question of title with the owner, so as to defeat the action."

Here it appears, from the certified exemplification of the record in evidence, that James A. Phelps, as receiver of the Metropolitan Marble Company, instituted before the county judge of Lewis county, N. Y., a summary proceeding against John J. Sullivan and his associates, charging them with unlawful and forcible entry into, and unlawful and forcible detainer of, the aforesaid tract of land, which proceeding, on December 21, 1897, resulted in a judgment dispossessing Sullivan, and restoring possession to Phelps, the receiver of said company.  Accordingly, and before this suit was begun, possession of the land was restored to this plaintiff, who was in possession when he brought this action, and has retained possession.  Moreover, upon an attentive examination of the record in this case, we fail to discover any evidence of title in the defendant or in Sullivan to the locus in quo.  Sullivan appears in the light of a mere trespasser, who had been in the temporary unlawful occupancy of the premises.  The case, as presented by this record, is not one of con-

flicting titles to the land. It will be observed that, at the time the court gave peremptory instructions against the plaintiff, the defendant had not put in any evidence whatever. We are therefore constrained to hold that, as the case then stood, those instructions were unwarranted and erroneous.

With respect to the second class of assignments of error, we content ourselves with saying that the materiality of the evidence to which these assignments relate is not clear to us. The judgment of the circuit court is reversed, and the case is remanded to that court, with direction to grant a new trial.