**PORT ARANSAS PROPERTIES, Inc., et al. v. ELLIS.**

**No. 10415.**

Court of Civil Appeals of Texas. San Antonio.

April 12, 1939.

Rehearing Denied June 14, 1939.

T. H. Burruss, Paul Martineau, and Sidney P. Chandler, all of Corpus Christi, for appellants.

Keys & Holt and Hayden W. Head, all of Corpus Christi, for appellee.

SMITH, Chief Justice.

This suit involves title to a parcel of land situated on Mustang Island and abutting upon the shores of Turtle Cove, in the City of Port Aransas (formerly Tarpon), in Nueces County. The parcel consists of land added by accretion from Turtle Cove to a ten-acre tract patented by the State of Texas to Captain J. Edward Cotter, on July 31, 1907, and identified herein as the J. E. Cotter ten-acre survey. Cotter is the common source of title.

The action is one in trespass to try title. It was brought by J. M. Ellis against his immediate grantor, Port Aransas Properties, Inc., and others not necessary to mention at this time, if at all. The State of Texas intervened in the suit, claiming title to the land in dispute between the other parties, but was denied recovery and has not appealed. Ellis, as plaintiff below, also recovered title as against the Properties Company and its co-defendants, all of whom have appealed. Trial was without a jury. The trial judge filed full findings of fact and conclusions of law. The appeal has been presented here by counsel for all parties with much ability and commendable clarity. The case has its difficulties, nevertheless.

It is conceded that Ellis has title to a part of the Cotter survey, under a valid deed from the Properties Company. The

chief controversy is over the issue of whether by that deed the Properties Company conveyed land up to and along the meanders of Turtle Cove, as the north boundary line of the parcel admittedly conveyed. That controversy breaks up into the questions of the construction of the field notes in the deed and of applying them on the ground. The accompanying plat shows the layout for the purposes of this inquiry:

Cotter Avenue; the roadway along the west line, the block out of the southeast corner, and the narrow (eleven-foot) strip along the east line, all delineated on the plat, have been taken out of the original Cotter Survey by express reservation or dedication, and thereby excluded from this controversy.

The dotted east-west line across and near the center of the platted area is intended to indicate the north boundary

line of the then approximate area included in the grant from the State to Cotter, bounded at that time, at least approximately, by the south shore line of Turtle Cove. Appellants concede that appellee has title to the area lying south of the dotted line, but insist that he is entitled to no more; that that dotted line marks the north line of appellee's ownership; that the remainder of the platted area, from the dotted line north, was made by accretion from Turtle Cove, and cannot be included in the conveyance to appellee, who, on the other hand, claims all of it by virtue of that conveyance. Appellee claims that the calls in the field notes in the deed to him from appellant carried the grant to and along mean low water mark on Turtle Cove, and entitled him to all natural accretions from the Cove. It will be observed that the accreted land considerably exceeds the original area. But that fact, alone, does not affect appellee's claim, unless, indeed, the accretion was artificially induced, and therefore not natural, as also contended by appellants and denied by appellee.

We are relegated, then, to the primary, if not all-controlling, question, whether the calls in the field notes in the deed from appellant to appellee carried the grant to and along the meanders of Turtle Cove, a natural inlet of the sea, and constituted the mean low water line of the cove as the north boundary line of the grant. The parcel in controversy lies slightly northeast and south-west, but for convenience will be treated as if lying north and south.

There seems to be—and can be—no controversy as to the location or extent of the south boundary line, or of the southeast or southwest corners of the original Cotter survey, or of the parcel thereof conveyed by the Properties Company to appellee. The parties are in agreement, upon these points and that line. As a practical matter the dispute is upon the calls in the field notes for the northern terminus of the west boundary line, for the north boundary line, and for the northeast corner. In short, as previously stated, appellee claims that those calls are for and along the meanders of Turtle Cove, while appellants claim those calls stop short of Turtle Cove at points originally marked by pine stakes, called for in the field notes. These contentions seem to require that the pertinent field notes in the links of title be set out with reference to the narrowed inquiry.

The original ten-acre survey was patented by the State to Cotter on July 31, 1907, the pertinent calls in the field notes in the patent being, as follows: (All italics ours.)

"* * * Thence N. 8° 32' E. *108.64* vs. to a pine stk. at *M. L. Water mark on said Turtle Cove* for a cor. of this sur.

"Thence S. 81° 28' E. with *M. L. W. in Turtle Cove* 112.12 vs. for the N. E. Cor. of this sur;

"Thence S. 8° 32' W. *112.2 vs.* to the place of beginning."

On March 7, 1927 Cotter conveyed a part of the original ten-acre survey to Aransas Holding Company, by deed describing the parcel conveyed as follows:

"Beginning at a point on the West side of said original 10 acre survey where it is intersected by the North line of Cotter Avenue; Thence No. 8° 32' E. with the west line of said original 10 acre survey to a pine stake at *M. L. Water mark on Turtle Cove* to a corner of said 10 acre survey and the N. W. corner of this survey;

"Then S. 81° 28' E. *with M. L. Water in Turtle* Cove 112.12 varas to the N. E. corner of said 10 acre survey and the N. E. Corner of this survey; Thence S. 8° 32' W. with the east line of said original 10 acre survey to a point in said line where it intersects the North line of Cotter Avenue for the S. E. corner of this survey;

"Thence in a westerly direction with the North line of Cotter Avenue to the place of beginning, less however," a small parcel out of the southeast corner, and an eleven-foot strip off the east side, the latter described as beginning at Cotter Avenue, "Thence N. 8° 32' E. to a stake in the north line of said original 10 acre survey at *M. L. Water in Turtle Cove* for the N. W. corner of this survey:

"Thence S. 81° 28' E. eleven (11) feet *with M. L. water in Turtle Cove* to the N. E. corner of said original 10 acre survey and the N. E. corner of this survey; Thence S. 8° 32' W. with the East line of said original 10 acre survey to the point where said line intersects the north line of Cotter Avenue, the place of beginning."

On August 24, 1929, Aransas Holding Company conveyed the identically described property, with the same reservation, to its subsidiary, Port Aransas Properties Company, which in turn conveyed it to ap-

pellee, J. M. Ellis, by the identical field notes, less an additional reservation of a 30-foot strip off the west side for a road.

■ It will be observed that in the patent to Cotter the field notes called for distances of 108.6 varas to mean low tide in Turtle Cove, for the west boundary line, and of 112.2 varas from mean low tide in Turtle Cove to the place of beginning, for the east boundary line. It is deemed quite significant that in the subsequent conveyances those two north and south calls for distance were omitted from the description. It seems to clearly indicate, as may be hereinafter reiterated, that the first of those calls was to carry to, and the second from, mean low tide, regardless of distances.

■■ It seems to be perfectly obvious from the description in the several conveyances that the land attempted to be conveyed to appellee included all that conveyed by the State to Cotter lying north of Cotter Avenue, less specific reservations subsequently made. Except for the calls for distances of the east and west boundary lines, appearing in the patent, but omitted in subsequent conveyances, all the pertinent calls in all the conveyances appear to coincide. They call, specifically and in terms, from the south to mean low water mark in Turtle Cove, and "with" that mark from the designated northwest corner to the northeast corner, both lines and corners being described as identical with those of the original Cotter survey. The conveyances were therefore, and obviously, of all (north of Cotter Avenue) that was intended to be conveyed in the patent, less specific reservations, made in mesne conveyances, of a specified block out of the southeast corner, an eleven-foot strip off the east side, and a thirty-foot road off the west side. Those reservations, being specifically made from time to time by different and succeeding grantors, effectually exclude any other claimed reservations, such as of the water front, now claimed by appellant. So that, if the State conveyed to Cotter to and along the water line, then Cotter and subsequent grantors conveyed the same. On the other hand, if the grant from the State did not run to and with the meanders of Turtle Cove, and carry with it future accretions from the Cove, then certainly no one but the State can claim the intervening land, which is the land involved in this controversy. In this very suit the State made that claim,

lost it to appellee, did not appeal, is now precluded.

■ We think it is clear, however, that descriptions in the patent and subsequent conveyances include the land sued for by appellee. The calls in the field notes are for mean low water mark in Turtle Cove for the northwest corner of the land conveyed. It is true the call, literally, is for "a pine stake at" said water mark. But, with certain exceptions not apparent in this case, the uniform rule is that calls for natural objects, such as Turtle Cove, control in conflicts with calls for artificial objects, such as a pine stake, as in this case, or for distance, such as in the patent here, but omitted from subsequent conveyances. 7 Tex.Jur. p. 159, § 33, and authorities there cited.

■ Of course if from the four corners of an instrument it is clear that the parties intended that other objects or considerations should prevail over calls for natural objects, then such intention should be given effect. Id., § 34 et seq. But there is nothing in this record to show any intention that the calls for Turtle Cove should yield to any other call. On the contrary, all the relevant facts and circumstances in the case indicate the intention that the grant, both from the State and its successors, should run to and follow the meanders of Turtle Cove, and include the land to the water's edge. In the patent the distance from the preceding call to the water line was given as 108.64 varas. That was in the year 1907, and while the land now runs many feet further north than that distance, it may have been approximately of that distance then. That conclusion may be inferred from the fact that twenty years later, when the original grantee conveyed the same property, he pointedly omitted the calls for distance to and from the water line. Be that as it may, however, there being nothing in the record to justify a departure from the rule in favor of natural objects over distance, or artificial objects, the rule should be adhered to in this case.

■ We see no occasion to go further into the case. The appeal seems to be settled by the conclusions stated, which render other questions immaterial. However, we will notice appellants' contentions that the trial judge erred in awarding all the accreted land involved to appellee; that the accreted land should be apportioned in part to others whom ap-

pellants allege owned adjoining properties. We overrule these contentions. Appellants do not appear to own any nearby properties, nor do they show, efficiently, who are such owners. Whoever they may be, they, not being parties to the suit (except the State), are not precluded by the judgment, and in no event can appellants complain. The same may be said of appellants' contention that the accreted land was made by artificial means, rather than naturally. If any one could complain of these matters, it would seem to be the State of Texas, which was a party to this suit and has not appealed from an adverse judgment.

No reversible error is shown, and the judgment is affirmed.