**CAGE BROS. et al. v. WHITEMAN et al.**

**No. 2315.**

Court of Civil Appeals of Texas. Waco.

June 26, 1941.

Rehearing Denied July 24, 1941.

Dan Moody and Herman Jones, both of Austin, for appellants.

Conway & Scharff and John Sheehy, all of Waco, for appellees.

RICE, Chief Justice.

Charles D. Whiteman, as plaintiff, brought this suit in the district court of McLennan county, Texas, against Cage Brothers, a co-partnership composed of Tom C. Cage and J. F. Cage, and Tom C. Cage and J. F. Cage, individually, Luther A. Turner, H. E. Williams, Acme Wire & Iron Works, a co-partnership composed of J. E. Ingram, R. W. Ingram and H. B. Ingram, and J. E. Ingram, R. W. Ingram and H. B. Ingram, individually, as defendants, seeking recovery in damages for conversion of sand and gravel alleged to be the property of plaintiff.

Upon the answers of the jury to the special issues submitted to it, the court rendered judgment against Cage Brothers, a co-partnership composed of Tom C. Cage and J. F. Cage, and against Tom C. Cage and J. F. Cage, individually, for the processed value (without deducting the cost of processing) of sand and gravel found to have been excavated and removed by them in the sum of $27,781.63; found that the evidence failed to establish a cause of action against the other defendants, and decreed· that plaintiff take nothing as to them; from which judgment only Tom C. Cage and· J. F. Cage, individually and as co-partners doing business under the name of Cage Brothers, and Cage Brothers, a co-partnership composed of Tom C. Cage and J. F. Cage, have appealed. Whiteman is herein referred to as plaintiff, and Cage Brothers, a co-partnership, as well as the individuals composing the firm, are referred to as defendants.

Plaintiff pleaded that he was the owner of the sand and gravel in place on and under a tract of 32 acres of land situated in McLennan county, Texas, by virtue of a written lease agreement made by him with T. F. Bush in March, 1937, by the terms of which the sand and gravel contained in said tract were conveyed to plaintiff, together with the right to erect buildings and machinery and make such improvements thereon as might be necessary for the mining, excavating, processing and removing of the sand and gravel therefrom. That upon the execution of the lease he went into possession, located

and defined the sand and gravel deposits; moved large quantities of machinery and equipment on said land; erected a processing plant, and built the necessary roads to excavate, process and remove the sand and gravel. That during the latter part of 1937 or the early part of 1938, Cage Brothers and L. A. Turner secured a contract from the State of Texas to pave a portion of highway No. 7 leading west from Waco, and were in need of large quantities of sand and gravel; that they, through their agents, entered into negotiations with plaintiff in respect to purchasing from plaintiff the lease he had obtained from Bush; and also in respect to the purchase of sand and gravel obtained from the leased premises; that failing in such attempts, defendants conspired among themselves to secure the sand and gravel from said land without purchasing same from plaintiff and to cause Bush to eject plaintiff therefrom; and, in the execution of such conspiracy, entered into an agreement with Bush on January 3, 1938, whereby they secured the latter's consent and permission to remove the sand and gravel from said land, and caused Bush to eject plaintiff, together with his plant and equipment, from the leased premises. That at the time defendants entered into the agreement with Bush, and at the time they entered on the tract of land and converted the sand and gravel, plaintiff's lease was in full force and effect and plaintiff was in possession and was producing sand and gravel from the lease, which facts were known to the defendants. That after plaintiff was forcefully ejected from the land, the defendants, not acting in good faith, but with full knowledge of plaintiff's rights, entered into possession and wilfully converted plaintiff's sand and gravel of the value, in its processed state, of $35,239.55, for which plaintiff sought recovery, less, however, the royalty defendants paid to Bush, but without deduction of or credit for the cost of processing.

Defendants presented (and the court overruled) a plea in abatement to plaintiff's suit, on the ground that a personal action for conversion of sand and gravel can not be maintained by a party, who, at the time of the excavation of the sand and gravel, was out of possession of the premises, against a defendant who excavates and removes such sand and gravel from land while that defendant has peaceable, adverse and undisturbed possession of the land under a claim of title for the reason that such action requires the adjudication of title to real estate, which can not be done in a damage suit for conversion of personal property. Subject to the plea in abatement, the defendants answered: (1) That at the time defendants went into possession under their lease from Bush, dated January 3, 1938, plaintiff's lease had expired by reason of his failure to pay Bush the royalty therein provided for. (2) That plaintiff's lease with Bush was void and plaintiff was not entitled to establish his ownership of the sand and gravel deposits covered thereby, because, after he had acquired such lease from Bush, plaintiff entered into an illegal contract with Potts-Moore Gravel Company to secure leases on gravel deposits in the vicinity of that portion of highway 7 embraced in the contract of Cage Brothers with the State of Texas, for the purpose of controlling the supply of available gravel; that such contract with Potts-Moore Gravel Company was in restraint of trade, and rendered plaintiff's contract with Bush void. (3) That defendants went into possession of said tract of land when plaintiff was out of possession, and removed the sand and gravel therefrom in good faith, relying upon a lease executed by Bush and the latter's representation that he had good title to said land and a perfect right to lease the same. (4) Defendants, by cross-action against Bush, sought recovery over for any amount that was adjudged against them on the following grounds: (a) They were induced to commit the acts complained of by the representations of Bush, on which they relied, that he had the right to lease to them the sand and gravel deposits in question; (b) because if plaintiff's lease was not void, there was a breach of the express and implied covenants contained in Bush's lease to them; (c) Bush was a joint tort-feasor with defendant and the latter were entitled to contribution.

Bush and plaintiff each filed a plea in abatement to the defendants' cross-action against Bush, and both were sustained by the trial court. The trial court also sustained plaintiff's exception to that portion of defendants' answer setting up as a defense an alleged illegal contract between plaintiff and Potts-Moore Gravel Company.

The jury, in answer to special issues submitted, found, in effect, as follows:

(1) That plaintiff's lease was in full force and effect at the time plaintiff was ejected from the land and at the time defendants entered into their lease agreement with Bush; (2) that the defendants, in entering upon the Bush tract of land to remove sand and gravel therefrom, did not do so in good faith, but with knowledge of plaintiff's ownership of such sand and gravel; (3) that the defendants were not acting under a claim of title acquired in good faith in removing sand and gravel from the Bush tract; (4) that the reasonable market value of processed gravel at the time and place of its conversion was 70 cents per ton, that the reasonable market value of processed sand at the time and place of its conversion was 60 cents per ton, and that the reasonable cost of processing sand and gravel on the Bush tract was 40 cents per ton.

Defendants' assignments of error numbered from 1 to 10, inclusive, are each based upon the proposition of law that a personal action for conversion of sand and gravel cannot be maintained by a party, who, at the time of the excavation of the sand and gravel, was out of possession of the premises, against a defendant who had peaceable, adverse and undisturbed possession of the land under a claim of title at the time such sand and gravel is excavated, for the reason that such action requires the adjudication of title to real estate, which cannot be done in a damage suit for conversion of personal property.

Plaintiff's cause of action is one for conversion of personal property, that is, sand and gravel after the same had been severed from the land by defendants, in respect to which he alleged ownership and the right of possession at the time of the conversion. Plaintiff's claim of ownership is predicated upon a lease from Bush, dated March 16, 1937, which plaintiff contends vested in him the title to the sand and gravel in place. Defendants asserted ownership of the disputed sand and gravel by virtue of a lease to them from Bush, dated January 3, 1938, covering the same tract of land described in plaintiff's lease, and which vested in defendants the right to remove therefrom the sand and gravel. Plaintiff pleaded his lease; that the same was of record in the deed records of McLennan county and was in full force and effect when defendants accepted their lease from Bush and when they converted the sand and gravel; that defendants, at all times, had notice and actual knowledge of plaintiff's rights in and title to such sand and gravel; and that defendants wilfully, and not in good faith, converted plaintiff's property.

In respect to the matters here involved, the effect of plaintiff's pleadings was that defendants' lease was void, that their claim of title to and right of possession of the sand and gravel was not made in good faith, and at the time they removed such sand and gravel from the land they were naked trespassers.

Plaintiff's suit was not one for trespass upon land and for damages growing out of such trespass, nor for his leasehold interest in the land; nor is it in trespass to try title nor to cancel defendants' lease from Bush; but, as stated above, is for the value of the processed sand and gravel after the same was severed from the land and converted by defendants not in possession under a bona fide claim of right. To entitle himself to recover the market value of the processed sand and gravel, less the royalty paid Bush therefor, plaintiff had the burden not only to establish in himself title to the sand and gravel in place and the right of possession at the time of conversion, but he also had the burden of establishing that defendants, at the time of the conversion, had notice or knowledge of plaintiff's ownership and right of possession; that the taking by defendants of the converted property was wilful, and not under a bona fide claim of right or title thereto. Thus it appears to us that while it was necessary that plaintiff plead and establish title in himself to an interest in the land, that is, title in himself to the sand and gravel in place, this did not render this suit one for title to the land, because the establishment of title and right of possession was only incidental to plaintiff's cause of action—recovery of the value of sand and gravel which had been severed from the land and converted by the defendants who were not then in possession under a good faith claim of right or title.

The case of Copper State Mining Co. v. Kelvin Lumber & Supply Co., Tex.Com. App., 227 S.W. 938, is, we think, decisive of the question here involved. Suit was brought in the district court of El Paso County, Texas, by Copper State Mining Company against Kelvin Lumber & Supply Company and Kidder and Burns for the

conversion of ore allegedly taken from a mining claim in the state of Arizona by Kidder and Burns, shipped to El Paso and sold to Kelvin Lumber & Supply Company. Plaintiff claimed title by virtue of a location made in the year 1915, while defendants Kidder and Burns claimed title by virtue of a location made in 1916. Kidder and Burns went into peaceful and adverse possession of the mine under their claim, after inquiry, and after information had been given to them by plaintiff's superintendent that plaintiff's claim had failed for failure to do necessary assessment work. After Kidder & Burns went into possession, they prohibited plaintiff or its agent from trespassing upon the claim, and thereafter Kidder and Burns, relying upon their claim of location made in 1916, took the ore in question from the mine. Defendants defended on the ground that when Kidder and Burns extracted the ore from the ground they were claiming under a bona fide title, were in possession, that the plaintiffs were out of possession, and that the action was in the nature of a trial to title to land and therefore could not be brought in El Paso county, Texas, but must be brought in Arizona at the site of the real property. The Court of Civil Appeals (203 S.W. 68) took the defendants' view of the action and held that the pleadings, the evidence and the findings of the trial court conclusively showed that plaintiff bottomed its cause of action upon its title to or better right of possession of the mining claim from which the ores in question were taken; that Kidder and Burns were in peaceful and adverse possession under location made by them after inquiry of plaintiff's superintendent as to whether plaintiff made any claim thereto and after they were informed that the assessment work required by law had not been done. The opinion of the Commission of Appeals reversed the holding of the Court of Civil Appeals, and held that the action was transitory and might be brought in El Paso county, Texas; and in doing so, determined that the attempted location made by Kidder and Burns upon the mine in Arizona was void by reason of plaintiff's previous location, and therefore Kidder and Burns were naked trespassers. In holding that the district court of El Paso county had jurisdiction, the court said [227 S.W. 939]: "A suit for the recovery of personal property or its value may be brought in this state for minerals unlawfully severed and converted

in another, where the petition is upon an independent cause of action for conversion of the personal property, *distinct from that for trespass to the land.* This right in our state courts is not abridged or destroyed because it may be necessary in such an action to allege and prove right of possession to the mining claim located in the other state." The Supreme Court expressly approved the holding of the Commission of Appeals that the district court of El Paso county had jurisdiction of the cause. The following authorities support the foregoing proposition: Guffey v. Smith, 237 U.S. 101, 35 S.Ct. 526, 59 L.Ed. 856; Laslie v. Gragg Lumber Co., 184 Ga. 794, 193 S.E. 763, 113 A.L.R. 932; Phelps v. Church of Our Lady, 3 Cir., 99 F. 683; Stone v. United States, 167 U.S. 178, 17 S.Ct. 778, 42 L.Ed. 127; Mexican Gulf Oil Co. v. Compania Continental De Petroleo, D.C., 281 F. 148; Id., 2 Cir., 242 F. 846; Gray v. Cornelius, D.C., 40 F.2d 67.

Appellants' assignments of error Nos. 1 to 10, inclusive, are overruled.

By assignments of error Nos. 2, 5, 7 and 11 through 16, defendants contend that the lease agreement between T. F. Bush and plaintiff did not vest in plaintiff title to the sand and gravel in place, and therefore plaintiff, under such agreement, could not recover, in an action for conversion, the processed value of the sand and gravel removed by appellants.

There was no pleading that the lease from Bush to plaintiff was ambiguous; and no attempt was made to amplify or explain any of its terms by parol.

The lease agreement relied on by plaintiff, and which was construed by the trial court to vest in plaintiff the title to the sand and gravel in place, reads (description of land omitted) as follows:

"I. That for and in consideration of Ten Dollars cash in hand paid this date, receipt of which is hereby acknowledged, and other good and valuable considerations hereinafter expressed, the Lessor hereby leases to the Lessee for a period of one year and as long thereafter as the terms of this lease are complied with by the Lessee, that certain tract of land composed of about 32 acres and situated east of the middle Bosque river, with the exception of that part of this tract upon which there is a pecan orchard, and Lessee is not to enter or work any part of this land contained

in the Orchard without written consent from the Lessor, however, Lessee has permission to use the road leading from this tract to the middle Bosque River for the purpose of pumping water, as per drawing as follows:

\* \* \*

"II. Lessee shall have the right of egress at all times and shall have the right to build all roads, railroads, pipelines, erect buildings and machinery and make any other improvements necessary for the proper handling of the sand and gravel to be removed under this lease. He shall have the further right to remove any such improvements, whether permanent or temporary, on the termination of this lease, subject to the terms of paragraphs Nos. V and VI.

"III. Lessee shall, at all times, keep written records of the amounts of the material removed from lease and same shall be available to Lessor for the purpose of verifying such amounts. Lessor shall have the right, at all times, to enter on and inspect all operations.

"IV. As a further consideration, Lessee agrees to pay to Lessor the sum of five cents per cubic yard of 3000 lbs. for all sand and gravel removed from this lease, quantities to be determined by truck measure when delivered by truck or by railroad bill of lading weights when shipped by rail, said five cents per cubic yard to be payable in cash at Waco, Texas, on or before the 15th day of the month for all material removed during the preceding month.

"V. Lessee further agrees to pay to Lessor on the 11th day of May of each year, beginning the 11th day of May, 1937, the sum of six hundred dollars, which amount shall be considered as advance royalty or purchase price for 12,000 yards of sand and/or gravel to be removed during the following year, and no additional royalty shall be paid during said twelve month period until 12,000 yards of sand and/or gravel have been removed, after which the payment shall be made as provided above, to-wit: on the 15th day of each month. Provided that should this lease be terminated for any cause before all material paid for in advance has been removed, title to such material not removed shall revert to the Lessor. Failure on the part of Lessee to pay any annual installment of $600.00 advance royalty in advance by the 11th day of May of each year

that this contract is in force, or failure on the part of the Lessee to pay any other royalties due hereunder within ten days from the due date of same, shall at the option of the Lessor forthwith terminate this lease and all rights of the Lessee hereunder.

"VI. Lessee shall have the right to terminate this lease at any time, upon 60 days written notice to Lessor, and shall have the right to remove all improvements as described in paragraph II, provided all money due Lessor has been paid. Lessor shall have a lien on all equipment owned by Lessee and located on the lease to secure payment of royalties due, and such equipment may not be removed until such payments are made.

"VII. Should Lessee fail to work lease or move gravel at any time during the life of this lease for a period of six months, then Lessors may at his option terminate this lease and all rights of the Lessee hereunder.

"VIII. Lessor shall have the full use of all land not actually being necessarily used by Lessee in its mining operations for the excavation, processing and marketing of said sand and gravel, and Lessee agrees to carry on all operations in a workmanlike manner and to confine said operations to the minimum area necessary for economical operation. Lessee shall maintain adequate gates or cattleguards where he crosses existing fences with his operations. No operations may be carried on within 100 feet of any existing buildings now on said leased premises. Lessee further agrees to repair, restore or reimburse Lessor for any damage to property or growing crops except on the area where gravel is actually being removed and processed."

The above lease is set out at length herein in order that its terms and provisions may be compared with the terms and provisions of the oil and gas lease which is set out in its entirety in the opinion of the Supreme Court of this state in the case of Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 292, 29 A.L.R. 566. In construing the legal effect of the oil and gas lease it had then under consideration, the court held that the same vested in the lessee a determinable fee in the oil, gas and other minerals in and under the land described in said lease, which minerals were held to be part of the land while in place. In reaching this decision the court said:

"Ownership of the gas and oil in place meant having the exclusive right to possess, use, and dispose of the gas and oil. The grantors were clearly divested of the right to either possess, use, or dispose of the gas and oil in place in the lands described in the instruments here involved as soon as the instruments were executed. At the same instant, the right to possess, use, and dispose of such gas and oil in place passed to the grantees in said instruments and to their assigns. * * * Dominion over a thing could not well be completer than it is in those persons who may, at their will, assign it to any other person, with or without consideration, for a time which may be forever. Sims v. Sealy, 53 Tex.Civ.App. 518, 116 S.W. 630. The fact that whoever owns the gas and oil, under these instruments, is subject to certain obligations to the former owners, express and implied, with regard to exploration for, and production of, the gas and oil, and with regard to the payment of royalties, in nowise reinvests the former owners with title. Nor does the possibility of future reversions accomplish present reinvestitures of title in the former owners."

The Supreme Court expressly recognized that the lease it was then construing differed in form from the leases construed by said court in the case of Texas Company v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.1917F, 989. In the last cited case the leases construed "granted, bargained, sold, and conveyed" to grantee "all the oil, gas, coal, and other minerals in and under" the land described. They contained a habendum clause, and a further provision as follows: "This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned * * *".

In reference to the difference in form of the lease it was then construing and the form of the leases construed in the Daugherty case, supra, the court, in the case of Stephens County v. Mid-Kansas Oil & Gas Co., supra, said:

"There is a difference in the form of the instruments dealt with in the Daugherty case and those now under consideration. The instruments involved in the Daugherty case expressly conveyed the minerals in the lands, and granted the exclusive right to conduct operations to mine, store, and transport same. They recited they were not intended to create franchises but were intended and understood to be conveyances of property and privileges. The instruments involved here lease the lands themselves and grant the exclusive right to prospect for, produce, and dispose of the minerals. The considerations for the two sets of instruments are not substantially dissimilar. Whatever was granted might be held under all the instruments as long as gas or oil was produced in paying quantities.
* * *

"We find it impossible to reasonably ascribe to the two sets of instruments, disregarding mere form and looking at substance, any different legal effects as regards the transfer of title to the oil and gas in place.

"Notwithstanding the distinctions attempted to be drawn in the decisions, we cannot conclude otherwise than that there is no real difference in the title conveyed, whether an instrument takes the form of a grant of the exclusive right to mine and appropriate all of a certain mineral (as in Benavides v. Hunt, supra [79 Tex. 383, 15 S.W. 396]) or takes the form of a demise of the land, for the sole purpose of mining operations, coupled with a grant of the exclusive right to produce and dispose of the mineral (as in this case), or takes the form of a grant of the mineral with the exclusive right to mine for, produce, and dispose thereof (as in Texas Co. v. Daugherty, supra). The results are substantially the same to all parties at interest, whether the one or other form of instrument be used. Why hold that instruments in different forms create different estates, where there is no difference in fact with respect to that of which each divests the grantor, his heirs or assigns, nor with respect to that with which each invests the grantee, his heirs, or assigns?"

The record reveals that at the time the lease was executed plaintiff was in the business of mining, processing and marketing commercial sand and gravel in McLennan county, and had been for a number of years.

It is clear, we think, that both Bush and Whiteman, at the time the lease was executed, contemplated that it would and did vest in Whiteman, and divest Bush of, the exclusive right to mine, process, remove from said land and dispose of all the sand and gravel in or on said land, for such consideration as he saw fit, and for such period of time as the lessee complied with the terms of the lease, which would probably be so long as there was sand and gravel

in place, and a market therefor, sufficient to make mining operations profitable.

We are unable to distinguish any real difference in the legal effect of the sand and gravel lease from Bush to plaintiff and the instruments construed in the Stephens County case above cited, and which the Supreme Court held vested in the lessee a determinable fee in the oil and gas in and under the land described therein. We think the reasons therein stated and the rule there announced are applicable to and controlling of the lease in question, and we therefore overrule assignments Nos. 2, 5, 6, and 11, through 16, and hold that said lease vested in plaintiff a determinable fee to the sand and gravel in place. Because of the view last above expressed, we are of the further opinion that assignments Nos. 5, 7, 17, and 18 are without merit, and each of them is therefore overruled. Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566; Theisen v. Robison, 117 Tex. 489, 8 S.W.2d 646; Benavides v. Hunt, 79 Tex. 383, 15 S.W. 396; Munsey v. Mills & Garrity, 115 Tex. 469, 283 S.W. 754; States Oil Corp. v. Ward, Tex.Com. App., 236 S.W. 446; Sheffield, Tax Collector, v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Mon-Tex Corporation v. Poteet, 118 Tex. 546, 19 S.W.2d 32; Phelps v. Church of Our Lady, 3 Cir., 99 F. 683; Dreeben v. Whitehurst, Tex.Com.App., 68 S.W.2d 1025; O'Connor v. Shannon, Tex. Civ.App., 30 S.W. 1096; Lynch v. Alworth-Stephens Co., 267 U.S. 364, 45 S.Ct. 274, 69 L.Ed. 660; United States v. Biwabik Mining Co., 247 U.S. 116, 38 S.Ct. 462, 62 L.Ed. 1017; Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460.

By assignments of error Nos. 19 through 24, inclusive, defendants say that the trial court erred in rendering judgment for plaintiff for the processed value of the sand and gravel removed by defendants, based upon the findings of the jury in answer to special issues Nos. 10 and 11, because such findings are contrary to law, are without support in the evidence, and because the evidence is insufficient to support the same, and because, from the undisputed evidence, it appears as a matter of law that defendants acted under a good faith claim of title in entering upon the land in controversy and in removing the sand and gravel therefrom.

The jury found, in answer to special issue No. 10, that in removing sand and gravel from the Bush tract defendants were not acting under a claim of title in good faith, believing that they owned the right to remove sand and gravel from said tract; and, in answer to special issue No. 11, found that in entering upon the Bush tract to remove sand and gravel therefrom, the defendants did not make the entry in the good-faith belief that their right to enter upon said land and remove. sand and gravel therefrom was superior to any right of plaintiff in said land.

We think that there was ample evidence to support each of the above mentioned findings, and said assignments are overruled. The statement of facts in this case is lengthy, and it is therefore impracticable for us to attempt to even summarize the evidence adduced bearing upon the questions involved. Suffice it to say that there was evidence that plaintiff secured from Bush the lease hereinabove set out; had the same promptly recorded in the deed records of McLennan county; went into possession of the land described in said lease; erected his machinery thereon, and began the processing of sand and gravel; that while plaintiff's lease was in full force and effect, defendant's agent came upon the leased premises and was then informed by plaintiff that he owned a sand and gravel lease on the premises, and that defendants' agent, on said occasion, discussed with plaintiff the sale of sand and gravel to defendants, to be used by them in the construction of a portion of highway No. 7 west of Waco, in the event that defendants obtained the contract therefor; that plaintiff (on the occasion above mentioned) stated to defendants' agent that he would not sell his lease, but would be interested in making sale of the processed sand and gravel. That thereafter defendants' agent went to Bush and negotiated with him in reference to obtaining a sand and gravel lease on the land in controversy; that Bush advised defendants' agent that plaintiff's lease was forfeited, and thereupon defendants, without further inquiry of plaintiff, entered into a sand and gravel lease with Bush covering the land leased by plaintiff. That Bush then caused the gate to the leased premises to be locked, thereby preventing plaintiff from entering on said land, and notified plaintiff that his rights under the lease were terminated.

Thereafter, in March, 1938, and before defendants had extracted any gravel or sand from the leased premises, plaintiff sent to defendants a registered letter, admittedly received by them, advising defendants of his ownership of the lease and telling them that he would hold them as for conversion if they took any sand or gravel therefrom. That thereafter T. C. Cage, one of the defendants, went to see Bush and stated to him that he had been advised of another claim to the leasehold interest in question, and was told by Bush that the assertion of this claim was simply a nuisance and that he had a right to execute the lease which he had executed to defendants. That thereafter defendants, without having made any further inquiry of plaintiff or further investigation of the matter, proceeded to excavate, process and remove sand and gravel from the leased property and to use it in the construction of a portion of state highway No. 7. The jury, with ample evidence to support its findings, having convicted defendants of wilfully converting the property of plaintiff, the trial court was correct in adjudging to plaintiff the market value of the processed material at the time of its conversion, less the royalty paid to Bush, without allowing defendants credit for the cost of processing. Stroud v. Guffey, Tex.Civ.App., 3 S.W.2d 592; also Guffey v. Stroud, Tex.Com.App., 16 S.W.2d 527, 64 A.L.R. 730; Guffey v. Smith, 237 U.S. 101, 118, 35 S.Ct. 526, 59 L.Ed. 856; Houston Production Co. v. Mecom Oil Co., Tex.Com.App., 62 S.W.2d 75; Gulf Production Co. v. Spear, 125 Tex. 530, 84 S.W.2d 452; Broughton v. Humble Oil & Refining Co., Tex.Civ.App., 105 S.W.2d 480. Moreover, the pleadings of appellee Whiteman raised the issue of wilful conversion on the part of defendants, and special issues Nos. 10 and 11, above referred to, were submitted to the jury in the exact language as requested by defendants. The latter did not object to the action of the court in submitting these issues to the jury; made no motion after verdict that the answer of the jury to the issue of wilful taking be disregarded by the court; nor did they make a motion for judgment notwithstanding the verdict. We doubt seriously whether the defendants, in this state of the record, were in a position to raise the errors complained of. Edmiston v. Texas & N. O. R. Co., Tex.Com.App., 138 S.W.2d 526.

Defendants, by their assignments of error numbered from 25 to 31, inclusive, contend that the trial court was in error in (1) sustaining Bush's plea in abatement to defendants' cross-action against Bush; and (2) in sustaining plaintiff's demurrer, special exceptions and plea in abatement to said cross-action. With this contention we do not agree, and said assignments are accordingly overruled.

Plaintiff did not make Bush a party to this suit. However, defendants timely filed their cross-action in three counts against Bush, seeking recovery over against him for any judgment obtained by plaintiff against them.

In the first count of their cross-action defendants sought recovery over against Bush because, they say, he represented to them that he had the right to lease the sand and gravel deposits to them; that they, believing this representation to be true, and solely because thereof, entered upon the leased premises and excavated and removed the sand and gravel therefrom; that if in fact Whiteman's rights under Bush were superior to their rights from Bush, and hence their taking of the sand and gravel was wrongful and rendered them liable in damages to Whiteman as for conversion, then Bush, whose misrepresentations caused them to commit the trespass, is liable to them for whatever sum Whiteman is allowed to recover. In their second count defendants contend they were entitled to judgment over against Bush for any amount adjudged against them, because of the breach of the implied covenant, in the lease from Bush to them, that he had good title to the sand and gravel deposits. By their third count defendants pleaded that Bush was an active agent in and the cause of their wrongdoing, and therefore they were entitled to recover contribution from him as a joint tort feasor.

Plaintiff sued for the market value of the processed material at the time of its conversion, less the royalty paid to Bush by defendants, but without deduction of the cost of processing. Plaintiff was entitled to recover this measure of damages only in event that the taking by the defendants was wilful; that is, without a good-faith claim of right or title, and with notice or knowledge of plaintiff's superior rights. There is no pleading that Bush actively participated in the actual mining and removal of the converted sand and gravel or that he re-

ceived any portion thereof, unless such participation is raised by the fact that defendants pleaded that Bush represented to them that he had the right to lease to them the sand and gravel deposits; that plaintiff's rights therein were no longer in force; that Bush executed to them a lease conveying the right of possession of the leased premises and the right to take and remove the gravel therefrom; that Bush placed them in possession; and that defendants had paid Bush, and he had received, the sum of five cents per yard as royalty for the material converted. Defendants, in their pleadings, admitted that they mined and removed the sand and gravel from the leased premises; and during the trial defendants stipulated that the converted materials were used by them in paving that portion of highway No. 7 on which they had a paving contract. If defendants did have notice or knowledge of plaintiff's rights in the leased premises, they were not misled by the representations of Bush, nor, for the same reason, would they be entitled to judgment over against Bush for any amount adjudged against them because of a breach of the implied covenants of the lease. If, on the other hand, they did not have such notice or knowledge, they acted in good faith and would then be liable to plaintiff only for the processed value of the converted material, less the cost of processing the same and less the royalty paid therefor. Under no theory of the law or equity, we think, could defendants recoup from another the damages assessed against them for the wilful taking of property, a taking with notice or knowledge of the true owner's rights therein, based on the claim that they were misled and induced to commit the unlawful taking by the false statements of such other, on which they relied. The two theories are so inconsistent one with the other that they can not both be true; if one is true, the other is by necessity false. Notice or knowledge of the real facts of a situation can not co-exist in the mind of the same person at the same time with a belief, however claimed to have been induced, that such facts are untrue.

■ For the reasons above expressed, we do not think that defendants' pleading was sufficient to constitute Bush such a joint tort feasor with defendants as would entitle the latter to contribution from him, because the defendants were, by the pleadings of plaintiff, charged with the taking and converting to their own use the property of another, not in the good-faith belief of their own ownership, but with notice or knowledge of another's rights therein. The pleadings of defendants show upon their face, we think, that the wrongful acts of Bush were completed, that their force was spent, before the actual taking by defendants began. If the taking of plaintiff's property by defendants was wilful, without bona fide claim of right, as it would necessarily have to be for plaintiff to recover herein, then Bush would be less culpable than defendants, because the latter have converted plaintiff's property at a time when they knew, or had notice of the fact, that Bush had no right to enter into a lease with them and that plaintiff's rights were superior to theirs.

■ Where a person with notice and knowledge of another's claim to property deliberately chooses not to avail himself of the orderly processes of the law in determining the validity of such asserted rights, and, instead, chooses to substitute himself as sole arbiter of the law and facts, and thereupon, biased by the hope of financial gain, and without making a full investigation of the other claimant's rights, renders a decision in his own self-interest, and thereupon, discarding his self-assumed judicial ermine, he assumes the role of sheriff and carries his edict into effect by taking another's property, we think he thus acts at his peril; and, if his findings of fact and conclusions of law be found erroneous on the trial of the issues before a duly constituted tribunal, well established principles of equity and sound public policy would dictate that he alone must bear the consequences of his deliberate usurpation of authority. Such was the charge made against defendants by the pleadings of plaintiff, and of this charge they stand convicted by the jury. To the factual situation here presented by plaintiff's pleadings and supported by the evidence introduced, we are of the opinion that neither the terms of Article 2212, Revised Statutes, nor the principles of law enunciated by our Supreme Court in the cases of Lottman v. Cuilla, Tex.Com.App., 288 S.W. 123, Gattegno v. The Parisian, Tex.Com.App., 53 S.W.2d 1005, and East Texas Public Service Co. v. Johnson, Tex.Com.App., 6 S.W.2d 344, have application; and that under neither of the three theories presented by defendants' cross-action would they be entitled to a judgment over against Bush.

■ If we are mistaken in reference to the foregoing, we would nevertheless overrule defendants' assignments of error, in so far as plaintiff's cause of action is concerned, because we believe that if the action of the court complained of was error, the same was harmless. Defendants' cross-action was not pleaded as a defense to plaintiff's cause of action for recovery against the defendants for conversion, but was a separate action which defendants desired to prosecute at the trial against Bush; and is therefore severable from plaintiff's cause of action. The error complained of involves the controversy between the defendants and Bush, and does not involve the action by plaintiff against defendants, and therefore, it occurs to us, affords no reason to reverse plaintiff's cause of action against defendants. East Texas Public Service Co. v. Johnson, Tex.Com. App., 6 S.W.2d 344; Anderson v. Hall, Tex. Civ.App., 137 S.W.2d 854; Stanton v. Security Bank & Trust Co., Tex.Com.App., 244 S.W. 593; Wood v. Love, Tex.Civ. App., 190 S.W. 235.

Defendants' 32nd assignment of error is that the trial court erred in sustaining appellee's special exception to that part of defendants' answer wherein defendants pleaded as a defense to plaintiff's suit that plaintiff was, by this suit, undertaking to enforce an agreement executed in violation of the civil and penal anti-trust laws of this state, and that the lease agreement relied upon in this cause was also unenforceable for the reason that it was used by appellee in the furtherance of the illegal scheme.

Defendants pleaded that plaintiff's cause of action against them is based entirely upon his lease contract with Bush, dated March 16, 1937; that said lease is unenforceable as to them because soon after its execution it became known to plaintiff and to Robert J. Potts, of Waco, Texas, that the State of Texas, acting through its highway department, would soon thereafter construct concrete pavement upon a portion of highway No. 7 in McLennan county, in which great amounts of sand and gravel would be used by the contractor performing such work; that the tract of land here involved was desirably located with reference to the proposed construction job, as were numerous other sand and gravel deposits; that prior to the advertisement for bids on said construction by the State, the Potts-Moore Gravel Company was exten-

sively engaged in the sand and gravel production business, and had secured a sand and gravel lease upon land located near the tract involved herein; that thereafter, in October, 1937, the Potts-Moore Gravel Company and plaintiff entered into a contract, reciting, in substance, that Potts-Moore Gravel Company and plaintiff were each engaged in the business of mining, processing and selling sand and gravel in McLennan county, Texas, and it was contemplated by the parties that the above mentioned paving project was to be constructed by the State of Texas; that one or the other of the parties to said contract would secure contracts from the paving contractor to furnish sand and gravel for the construction of the project. It was agreed that Potts-Moore Gravel Company would bid upon the sand and gravel contract; that plaintiff would not bid but would furnish all the gravel therefor and as much sand as he would have available; that Potts-Moore Gravel Company would finance the undertaking and furnish the sand which would be required in excess of that furnished by plaintiff; that all contracts would be taken in the name of Potts-Moore Gravel Company and it would receive all payments due thereunder; that the profits would be divided equally between the contracting parties. Defendants also alleged that as a part of the planned scheme and program, it was agreed between the contracting parties that plaintiff, to further insure the effectiveness of the sand and gravel trust and monopoly created by said contract, should locate and secure leases on all other sand and gravel deposits which were situated in such proximity to the proposed pavement project as to make them available for use in the construction work in order that the contracting parties would control all sand and gravel deposits which could be factors in the proposed work. Defendants further alleged that the scheme was designed to stifle competitive bidding, influence prices and create a trust and monopoly in the sand and gravel in the vicinity of the proposed highway work, in violation of the Civil and Penal laws of the State; that pursuant to the scheme, plaintiff did secure lease contracts covering nearby lands, and did refrain from bidding in competition with the Potts-Moore Gravel Company, which did bid as agreed upon.

Defendants further alleged that the lease contract of March 16, 1937, executed by

plaintiff and Bush, was used by plaintiff and Potts-Moore Gravel Company as an integral part of the scheme aforementioned; that the effectiveness of the conspiracy in restraint of trade depended entirely upon the enforcement of plaintiff's lease from Bush; that by such illegal use of said contract by plaintiff and Potts-Moore Gravel Company, the same became an instrument for the accomplishment of purposes contrary to public policy, in violation of the civil and criminal statutes of Texas; that plaintiff, in this suit, undertakes to assert rights and privileges under said contract against these defendants, who, in respect to same, stand in the position of Bush by reason of their contract of January 3, 1938, with Bush; that if such effort is successful it will result in effectuating the illegal designs of the conspiracy of the appellee and Potts-Moore Gravel Company; that such illegal use by plaintiff of his lease contract rendered the same void as against Bush or defendants holding under him.

■ We overrule this assignment. Plaintiff's cause of action was in tort and was not an attempt to enforce the contract, written or verbal, alleged to have been entered into between himself and Potts-Moore Gravel Company. The establishment of the contract between plaintiff and Bush was incidental to plaintiff's cause of action against Cage Brothers, and was pleaded and introduced by plaintiff for the purpose of showing title to and rights of possession of the gravel alleged to have been converted by defendants. Defendants admit that the gravel contract entered into between plaintiff and Bush on March 16, 1937, was valid and not tainted with the abovementioned conspiracy at the date of its execution. The illegality of the contract alleged by defendants to have been entered into by plaintiff and Potts-Moore Gravel Company did not, in our opinion, authorize Cage Brothers to appropriate plaintiff's property to their own use and benefit with impunity. Harms v. Cohen, D.C., 279 F. 276; Motion Picture Patents Co. v. Ullman, C.C., 186 F. 174; Vitagraph, Inc., v. Grobaski, D.C., 46 F.2d 813; 41 C. J., p. 185, § 10.

By their 33rd and 34th assignments of error, defendants say that where there were numerous defendants other than appellants, and where the trial court overruled in its entirety the motion for directed verdict presented by each and all of the defendants at the close of appellee's evidence and at the close of the case, and where the trial court found in its judgment that the evidence failed to establish a cause of action against the numerous defendants other than appellants, it was error for the trial court to render judgment against appellants for the processed value of sand and gravel based upon findings of the jury in answer to special issues which permitted the jury, in making their answers, to consider the good or bad faith of the numerous other defendants in addition to appellants.

■ These assignments can not be sustained. The fact issues upon which these assignments are grounded were presented to the court by appellants' requested special issues Nos. 1 and 2. The court incorporated each of these issues in his main charge as special issues Nos. 10 and 11. Said issues and the answers thereto are as follows:

"Special Issue No. 10: Do you find from a preponderance of the evidence that the defendants, in removing sand and gravel from the Bush tract, were not acting under a claim of title in good faith believing that they owned the right to remove sand and gravel from said tract? You will answer this special issue 'They were acting in good faith' or 'They were not acting in good faith.'

"Answer: They were not.

"Special Issue No. 11: Do you find from a preponderance of the evidence that in entering upon the Bush tract to remove sand and gravel therefrom, the defendants made the entry in the good-faith belief that their right to enter upon said land and remove sand and gravel therefrom was superior to any right of plaintiff in said land? You will answer this special issue 'Yes' or 'no.'

"Answer: No."

No objection was made to the submission of these issues. Moreover, Cage Brothers, during the trial of the case, stipulated that they took the sand and gravel from the Bush tract, removed it and used it in fulfilling their contract with the State of Texas in constructing highway No. 7. It was also in evidence that H. E. Williams, who negotiated the contract from Bush to Cage Brothers, was an employee and agent of Cage Brothers. The other defendants, who went out of the case, were not shown to have participated in the taking of plain-

tiff's sand and gravel. Since the jury convicted the appellants of bad faith in removing the sand and gravel from the Bush tract, it follows that assignments Nos. 33 and 34 must be overruled. First State Bank of Denton v. Smoot-Curtis Co., Tex.Civ. App., 121 S.W.2d 667; Koontz v. Calglazier & Hoff, Inc., Tex.Civ.App., 5 S.W. 2d 618; Guaranty St. Bank of Hutchins v. Beard, Tex.Civ.App., 18 S.W.2d 679; Shell Petroleum Corp. v. Grays, 131 Tex. 515, 114 S.W.2d 869; Port Aransas Properties, Inc., v. Ellis, Tex.Civ.App., 129 S.W.2d 699; Rogers v. South Texas Bank & Trust Co., Tex.Civ.App., 77 S.W.2d 707.

Defendants' assignment of error No. 35 is that the trial court erred in rendering judgment in favor of appellee and against the partnership, Cage Brothers, as a legal entity, which was sued in the partnership name.

The plaintiff brought this suit against Cage Brothers, a co-partnership composed of Tom C. Cage and J. F. Cage, and against Tom C. Cage and J. F. Cage, individually. The trial court rendered judgment in favor of plaintiff against the defendants Cage Brothers, a co-partnership composed of Tom C. Cage and J. F. Cage, and against the defendants Tom C. Cage and J. F. Cage, individually. Defendants contend that said judgment is against the partnership firm and not against the individual members thereof as partners, and therefore is not a valid judgment. In our opinion, said judgment is a joint and several judgment against the abovementioned members of such partnership, and we overrule this assignment. Blumenthal v. Youngblood, 24 Tex.Civ. App. 266, 59 S.W.2d 290; Williams Land Co. v. Crull, 59 Tex.Civ.App. 345, 125 S.W. 339; Baria v. Taylor, Tex.Civ.App., 57 S. W.2d 858; Bendy v. W. T. Carter & Bros., Tex.Com.App., 14 S.W.2d 813.

The judgment of the trial court is affirmed.